## Miller *versus* Canal Commissioners.

1. Though the Act of 15th April, 1834, authorizes *individuals* to place cars on the Columbia and Philadelphia Railroad, yet an individual has no right to run thereon a car which has been condemned and was at the time unfit for service.

2. The Pennsylvania Railroad Company having no right of itself to run cars on the Philadelphia and Columbia Railroad, cannot do so in connection with an individual.

3. In the petition for a *mandamus* it was said that the petitioner and *Company*, without designating the persons, were the owners of a car which was offered for transit on the Columbia Railroad. In the answer it was asserted that to the best of the defendants' knowledge and belief, the Pennsylvania Railroad Company, or some of its officers in trust for it, was the principal owner of the car. The answer was demurred to. It was *Held*, that as the relator had not chosen to state who his partners were, he could not take advantage of the want of a positive statement in the answer, as to the names of his partners. The judgment in the matter is to be given against him who committed the first error.

4. But in the petition and writ, the grievance being stated to be the refusal to attach a car belonging to David Miller individually, it was not incumbent on the respondents to render any reason for not attaching a car belonging to David Miller & Company.

THIS was an application to the Supreme Court, when sitting in September, 1852, in the Western district, by David Miller for a *mandamus* to be issued to the Canal Commissioners, in which it was, *inter alia*, represented:

"That for several years, petitioner has by himself and in conjunction with other persons, carried passengers in cars drawn by the motive power of the state, to and from Columbia and Philadelphia, over the Columbia and Philadelphia Railroad, with the knowledge and approbation of the Canal Commissioners, a body constituted by law to superintend the said railroad as one of the public works of the state.

"The petitioner for himself and his copartnerships duly paid to the Canal Commissioners, or their duly constituted agents, from time to time as required, such tolls and other charges as were imposed by the said Canal Commissioners for the conveyance of passengers over said railroad as aforesaid.

"On the 20th day of May last the petitioner received notice from the said Canal Commissioners of a resolution adopted by the Board on the previous day, stating that a contract had been

[Miller *v.* Canal Commissioners.]

formed with Messrs. Bingham & Dock, for the carriage of all persons and mails over the state road, except passengers carried by the West Chester Railroad Company, and by market cars. The contract was to go into effect by its terms on the 1st of July ensuing. A copy of it was attached.

" Since the date of this, a publication has been made under the apparent authority of the Canal Commissioners, of which a copy of the paper purporting to be a copy of the contract above referred to, forms a part. (A copy of the said contract, made with Bingham & Dock, was attached.) He charged that if the Canal Commissioners made such a contract, they made it without any public notice inviting proposals for such a contract.

" Petitioner annexes hereto a copy of a resolution passed by the said Canal Commissioners on the said 19th of May last, prescribing the terms upon which transporters of passengers were to use the Philadelphia and Columbia Railroad, including the toll and motive power. The petitioner complied with this resolution by continuing to carry passengers and paying the rates fixed therein until stopped by the order of the Canal Commissioners from using said railroad, as hereinafter stated.

" On the 23d of June last, petitioner received a copy of a notice of another resolution, dated Towanda, June 12th, 1852, postponing the commencement of the contract with Bingham & Dock to the 16th of August.          *          *          *          *

" The way or accommodation train of cars, as it is called, between Philadelphia and Columbia, leaves Philadelphia at 2 o'clock, P. M., and Columbia at $1\frac{1}{2}$ P. M., every day. It was in connection with this train that petitioner's cars were run.

" On the 16th day of August last, a passenger car in petitioner's own name, and used on his individual account, and another passenger car owned by D. Miller & Company, of which firm petitioner is one, were started by petitioner's order, in the usual way, from his office, No. 272 High street, in the city of Philadelphia, for the purpose of having said cars carried over the Philadelphia and Columbia Railroad by the motive power aforesaid. The two said cars were each nearly filled with passengers who were bound to Columbia and various intermediate points. The said cars arrived on the railroad of the state at the proper time for the 2 o'clock train of cars, at West Philadelphia, that being the place appointed by the Canal Commissioners for the attachment of cars to the motive power and the departure of westward trains over the said Philadelphia and Columbia Railroad.

" The agent for and in behalf of the Canal Commissioners in charge of the motive power and the railroad, was then and there requested by petitioner to attach, or permit to be attached, the said two passenger cars to the motive power of the state for transportation. He refused to make and permit to be made any

[Miller v. Canal Commissioners.]

attachment whatever of said cars to said motive power. Petitioner then went to the collector of tolls office, and demanded a clearance for the said cars, and made a formal tender of the wheel toll in money, which tender was refused by the collector. The petitioner then demanded of the said agent of the Canal Commissioners, to attach said passenger car, which was *in petitioner's individual name, and used on his own account* as aforesaid, to the said motive power, but the said agent refused to make or permit any attachment whatever, by the orders, as he averred, of the Canal Commissioners.

\*     \*     \*     \*     \*     \*     \*

The petitioner said that each of the said two cars offered for attachment as aforesaid, was in all respects conformable to the rules and regulations of the Board of Canal Commissioners, and that the time and manner of attachment demanded, were also in conformity therewith.

The petitioner insisted that he had the right by law, *as an individual*, to place his said car on the said railroad, and attach, or have his said car attached, to the locomotive cars belonging to the Commonwealth for the purpose of transportation, and that the refusal to permit his car to be attached, to the motive power aforesaid, was without legal authority, and contrary to law. He charged that the said John A. Gamble, William T. Morrison, and Seth Clover, under the pretence of their authority as Canal Commissioners, in refusing to transport petitioner's cars as aforesaid, had occasioned damage to him; and that the refusal aforesaid was in pursuance of a determination to close the said railroad for the carriage of passengers against all other persons but the said Bingham & Dock. He charged that said acts and doings of the said John A. Gamble, William T. Morrison, and Seth Clover, are without and in violation of law, and the rights of the petitioner.

He prayed the Court to issue a writ of *mandamus* to the said Canal Commissioners, naming them, requiring them to attach *the said passenger car of the petitioner* to the motive power belonging to the Commonwealth, for the transportation of passenger cars over the said Philadelphia and Columbia Railroad.

The agreement with Bingham & Dock was the one referred to in the case of the Pennsylvania Railroad v. The Canal Commissioners, antea; its date being the 19th May, 1852.

In the answer of the Canal Commissioners, in addition to matters alleged in the answer in the case of the Pennsylvania Railroad Company, antea, it was stated that David Miller, in conjunction with others, for several years past had carried passengers drawn by the motive power of the state, over the Philadelphia and Columbia Railroad; and at the time of the alleged grievance eight or nine tenths of the line of cars claimed by D. Miller & Com-

pany, were owned by the Pennsylvania Railroad Company; that he had not at any time any car on the road *in his own name individually;* and that the car presented had not been inspected, and had been removed *as unsafe.*

A demurrer to the answer was entered on behalf of the petitioner.

The opinion of the Court was delivered, December 29, 1852, by
BLACK, C. J.—In this case it is asserted in the writ of *mandamus*, that the relator demanded of the respondent's agent on the Columbia Railroad, that two cars offered by him and filled with passengers should be attached to the motive power of the Commonwealth, which was refused. In the answer it is alleged as to one of the cars so offered, that it had been previously condemned by the inspector of cars as unfit for service, and according to a rule established by the board of Canal Commissioners, it was not entitled to be replaced on the road until it was again submitted to inspection, and approved by the proper officer; and this it is said was never done. The demurrer admits the answer to be true in point of fact. The refusal to attach a car condemned, according to a rule which no one denies to be wise and just or made by legal authority, is not a wrong.

The writ avers that the other car was owned by David Miller & Company, of which firm the relator was one, but it does not say who were the other partners. The answer asserts that the Pennsylvania Railroad Company, or some of its officers in trust for it, was the principal owner of the last-mentioned car. If this must be taken for true, it puts an end to the case. The Railroad Company cannot run cars on the state road in partnership with another person, any more than it can do so on its own account without a partner. But a demurrer only admits such facts as are well pleaded, and it is argued that the partnership of the Pennsylvania Railroad Company with David Miller, is not to be taken as true, because the respondents have not alleged it positively but only according to the best of their knowledge and belief. Let the correctness of this argument be conceded, doubtful though it be. We must look at the whole record, and give such judgment as the very right of the cause demands; and since the relator has not chosen to say who his partners were, he cannot have any advantage from the defective manner in which the respondents' allegation on that point is set out. The familiar rule which requires judgment to be given against the party who has committed the first error, is decisive. This is not merely technical, but a substantial and just objection to the relator's demand. If a peremptory *mandamus* were awarded to attach the cars of the relator and his unknown partners, it might have the effect of placing persons on the state road who are excluded from the use of it by the laws of the Commonwealth, or by a regulation of the Canal Commissioners,

with which we have no authority to interfere. The probabilities are that such would be the result. There can have been no reason why the relator should conceal the names of his partners, except a consciousness that the disclosure would be dangerous to his case. There is another reason still more decisive, for disregarding all that is said about the car owned by the relator in partnership with others. The petition prays for a *mandamus* requiring the Canal Commissioners to attach not the cars of David Miller & Company, but those of David Miller himself to the motive power, and the writ commands them to do so or show cause to the contrary. They are not required to render any reason whatever against attaching the cars belonging to a partnership of which the relator is a member. The respondents might well and safely have omitted altogether giving an answer to what the writ says on that subject. The relator therefore, by his petition and writ, has put his whole case on the refusal to attach the car run on his own account and in his own individual name. By the demurrer he admits that car to have been unworthy and unfit for service, and it was properly refused a place in the train, in pursuance of a regulation which the respondents had full authority to make, and which it would have been a gross neglect of their duty not to make.

Though it is not necessary to give any opinion on the other questions raised and argued by counsel, we will not close without briefly stating our impression upon some of them.

The state is the absolute owner of the public works, and may use them as she pleases for her own profit and advantage, disregarding all considerations arising out of the interests of individuals.

By the organic structure of the government, the power of determining how these works shall be used, is primarily vested in the legislature. That department may exercise the power itself, or delegate it to other agents.

It has been delegated to the Canal Commissioners. On them the legislature has devolved the duty of exercising the proprietary and in some degree the sovereign rights of the state. By the Act of 16th April, 1838, they are authorized to make such rules and regulations not inconsistent with the laws of the Commonwealth, as they may deem reasonable in all matters connected with the use and preservation of the railroads. This commits to them the management of the railroads, with authority to do whatever is not forbidden. When the law is silent, their discretion comes in place of law.

But the rules and regulations made by the Canal Commissioners must not be inconsistent with law. A regulation which denies to individuals the right of attaching cars to the Commonwealth's locomotives, is inconsistent with the Act of 16th April, 1834, by which it is provided that individuals shall have that right.

[Miller *v.* Canal Commissioners.]

An agreement between the Canal Commissioners and one or more individuals, by which the sole and exclusive use of the state railroad either for all purposes or for a particular purpose, such as the carrying of passengers, is given away during a term of years, is not a regulation according to the Act of 1838; and as a contract it is not binding on the state, but may be repudiated and disowned whenever the legislature thinks proper to do so.

The most doubtful question is whether we have the power to control the respondents in the execution of their duty. Certainly we cannot transform ourselves into a board of canal commissioners, and prescribe how the railroads shall be managed, or on what terms individuals shall be permitted to use them, and a general order that certain persons shall have their cars attached agreeably to the rules and regulations of the Canal Commissioners, would be mere *brutum fulmen,* which a new regulation could set at nought the next day. For an abuse of their power (says Chief Justice GIBSON in Leech *v.* The Canal Commissioners), they are not answerable to this Court. "The only possible restraint," says Mr. Justice LOWRIE in Downing *v.* McFadden, "on official discretion consistent with its exercise, is that of responsibility for misdemeanor in office, and the liability to action if the discretion be maliciously exercised." But there are arguments on the other side, and while we adhere to the whole doctrine of the two cases cited, it cannot be safely asserted that either of them fully covers this point. It is better, therefore, to leave it open until an occasion arises necessarily calling for the decision of it.

Our judgment against the relator is based on the fact that the car he offered was a condemned one, excluded from the road by a rule which the respondents had a right to make. In two weeks more the legislature will be in session, and they have the unquestionable power, if they see fit, to put him and the Pennsylvania Railroad Company both on the state road, with condemned cars as well as sound ones, and to abrogate the contract complained of or affirm it according to their own sense of justice and policy, and no judgment of ours could take this authority from them.

Judgment for the respondents that the peremptory *mandamus* be refused, and that respondents have their costs.