J-A14006-21

2021 PA Super 150

| | | |
|---|---|---|
| ALYSSA MCLAUGHLIN AND WILLIAM MCLAUGHLIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AMIT NAHATA, M.D.; KATHRYN SIMONS, M.D.; ANNE F. JOSIAH, M.D.; THOMAS PIROSKO, D.O.; JESSIE GANJOO, M.D.; ASHLEY BERKLEY, D.O.; THE WASHINGTON HOSPITAL; AND WASHINGTON HEALTH SYSTEM WASHINGTON HOSPITAL | : | No. 1115 WDA 2020 |
| | : | |
| v. | : | |
| | : | |
| DIALYSIS CLINIC, INC. | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered February 5, 2020
In the Court of Common Pleas of Washington County
Civil Division at No:  2015-3223

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

OPINION BY MURRAY, J.:                    **FILED: JULY 28, 2021**

Dialysis Clinic, Inc. (Appellant) appeals from the order denying its motion for summary judgment and rejecting its claim that Appellee, The Washington Hospital (TWH),[1] may not seek indemnity or contribution from

---

[1] Appellee "Washington Health System Washington Hospital" is a business entity related to TWH.  We reference both entities as TWH.

Appellant, TWH's co-defendant in this medical malpractice action. Upon careful review of the law and the record, we affirm.

## Procedural History

The trial court detailed the procedural history of this case, noting the "recurring battles" between Appellant and TWH, as follows:

[On] February 5, 2020[, the trial court permitted TWH] . . . to proceed to trial in its effort to obtain contribution or indemnity from [Appellant] with regard to a total verdict of $17,263,159.33, [entered in favor of the plaintiffs Alyssa McLaughlin (Mrs. McLaughlin) and William McLaughlin (collectively, "Plaintiffs" or "the McLaughlins")]. TWH is the ostensible employer and [Appellant] is an actual employer of [two physicians who provided medical treatment to Mrs. McLaughlin while she was a patient at TWH in June 2013], Dr. Jessie Ganjoo [(Dr. Ganjoo)] and Dr. Amit Nahata [(Dr. Nahata)[2]]. These physicians were found to be at fault for causing catastrophic harm to the Plaintiffs.

\*\*\*

On September 23, 2015, the Plaintiffs commenced this action against Drs. Nahata and Ganjoo, TWH, and several other physicians[, including Ashley Berkley, D.O. (Dr. Berkley)]. [Appellant] was not named as an original defendant. On September 6, 2016, Dr. [] Berkley filed a Complaint to Join [Appellant], as the employer of Drs. Ganjoo and Nahata[; Dr. Berkley asserted Appellant was vicariously liable for the negligence of Drs. Ganjoo and Nahata and sought indemnity and/or contribution from Appellant.] In response, [Appellant] denied that it employed Drs. Ganjoo and Nahata and that they were acting within the course and scope of their employment with [Appellant] when treating Mrs. McLaughlin.

After some period of discovery, [Appellant] began a series of efforts to gain dispositive relief and avoid trial[, including filing a motion for summary judgment on June 26, 2017. Appellant denied any liability to Plaintiffs or entitlement of the other

_____

[2] Drs. Ganjoo and Nahata had staff privileges at TWH.

defendants – *i.e.*, TWH and the various physicians named in the caption – to indemnification/contribution from Appellant.[3] [The Honorable] Damon Faldowski denied [Appellant's] motion for summary judgment. Judge Faldowski cited the "longstanding principle" that an employer may be liable for the tortious acts of his employee when the employee is acting within the course and scope of his employment. In denying reconsideration of that decision, Judge Faldowski wrote:

> It is **clear from the record** that Defendants Amit Nahata, M.D. and Jessie Ganjoo, M.D. **are employees of** [**Appellant**], therefore this Court denied [Appellant's] Motion for Summary Judgment.

(See Opinion and Order, 9/1/17) (emphasis added).

Following this ruling, TWH filed an Amended Crossclaim on April 13, 2018[, seeking indemnification/contribution from Appellant]. Being filed after a further period of discovery directed to [Appellant], TWH's crossclaim more specifically pleaded [Appellant's] relationship with Drs. Ganjoo and Nahata. [Appellant] filed preliminary objections seeking to dismiss TWH's crossclaim, which [the] trial court overruled. [The] court explained that [Plaintiffs'] cause of action was distinct from the contribution and indemnity claims asserted by TWH. [The] court added that because no settlement or judgment had taken place, the statute of limitations could not have expired as to TWH's claims against [Appellant]. [Appellant] then filed its answer, admitting that it executed employment agreements with Drs.

---

[3] Appellant argued:

> [W]ell-established Pennsylvania law [dictates] that [Appellant] cannot be the subject of a claim for contractual or common law indemnity in this matter. . . . [Appellant] has not been alleged to be primarily liable via active negligence, and each individual defendant, if found liable, must be found primarily liable via active negligence. Equally clear is that [Appellant] is not the proper subject of any claim for contribution because [Appellant] is not a joint-tortfeasor . . .

Brief in Support of Motion for Summary Judgment, 6/26/17, at 16.

Ganjoo and Nahata but denying that it employed those physicians at times material to this action.

On August 16, 2019, [the trial] court denied [Appellant's] second motion for summary judgment. In denying [the motion, the] court again rejected [Appellant's] claims that the statute of limitations had expired with regard to TWH's indemnity and contribution claims. In doing so, the trial court cited ***Oviatt v. Automated Entrance Sys. Co., Inc.***, 400 Pa. Super. 493, 502, 583 A.2d 1223, 1228 (1990), which directs that the "right to contribution is distinct from the underlying tort action." ***Id.*** (citations omitted).

Also on August 16, 2019, [Appellant] sought to have the trial bifurcated. [Appellant] argued that "no party should be permitted to introduce evidence of actual agency or the employment of Drs. Ganjoo and Nahata by [Appellant]." Further, [Appellant] requested that the trial court preclude evidence, argument or proof with respect to all claims for contribution or indemnity against [Appellant]. The [trial court found that the] probability of juror confusion and speculation regarding the [claims] . . . that [Appellant] would present in a common proceeding, where jurors would not be told of [the cross]claims against [Appellant] or its relationship to Drs. Ganjoo and Nahata, was real. The trial court directed separate trials and severed Dr. Berkley and TWH's claims against [Appellant].

The McLaughlins and several of the individual original defendants [moved] to include Dr. Berkley, then agreed to settlements. The McLaughlins, TWH, Drs. Ganjoo and Nahata then consented to the discontinuance of claims against Dr. Berkley and the other individually named physicians. Because [Appellant] had been granted a separate trial and had not raised any claims against the settling original defendants, its objection to this discontinuance was overruled.

The McLaughlins, TWH, Drs. Ganjoo and Nahata agreed to try their dispute non-jury and to submit reports in lieu of live expert testimony. [Appellant] did not agree to a non-jury consideration of TWH's crossclaims. The claims of the McLaughlins and the crossclaims of TWH remained severed.

Th[e] trial court viewed a separate trial of crossclaims against [Appellant] as a means to protect the Plaintiffs' procedural

- 4 -

due process rights. Due process not only requires an opportunity to be heard, but also that the opportunity is provided "at a meaningful time and in a meaningful manner." ***Mathews v. Eldridge***, 424 U.S. 319, 333 . . . (1976)[; ***see also***] ***Smith v. City of Philadelphia***, 147 A.3d 25, 32 (Pa. Cmwlth. 2016). The pre-trial litigation of this medical negligence action was unique. The parties did not vigorously dispute the [merit] of the Plaintiffs' claims. Instead, pre-trial litigation was dominated by recurring battles between TWH and [Appellant] regarding the sufficiency of crossclaims pleaded, discovery of related insurance matters and [Appellant's] potential liability for indemnity and contribution. Meanwhile, the Plaintiffs' "day in court" was delayed while they continued to endure ongoing harm and economic loss due to the catastrophic injury Mrs. McLaughlin sustained.

On October 11, 2019, following a September [23, 2019] non-jury trial and extended consideration thereafter of the evidence presented, the trial court issued a Memorandum and Order that included 92 separate findings of fact and a non-jury verdict. The trial court determined that Dr. Nahata was 75% causally negligent and Dr. Ganjoo was 25% so. The trial court accepted the parties' stipulated findings that both Dr. Ganjoo and Dr. Nahata were not employees but ostensible agents of TWH.[4]

---

4 Pennsylvania's Medical Care Availability and Reduction of Error Act ("MCARE Act"), 40 P.S. § 1303.101 *et seq.*, governs medical professional liability claims against physicians. MCARE Act section 1303.516 establishes the statutory standard for "ostensible agency":

**(a) VICARIOUS LIABILITY.—** A hospital may be held vicariously liable for the acts of another health care provider through principles of ostensible agency only if the evidence shows that:

**(1)** a reasonably prudent person in the patient's position would be justified in the belief that the care in question was being rendered by the hospital or its agents; or

**(2)** the care in question was advertised or otherwise represented to the patient as care being rendered by the hospital or its agents.

40 P.S. § 1303.516.

The trial court entered a verdict against Dr. Ganjoo, Dr. Nahata and TWH, in a total amount of $15,054,950. [Appellant was not a party to the non-jury trial or the stipulations.] On November 13, 2019, in an unopposed motion for delay damages, $2,208,209.33 was added to the verdict for [Plaintiffs].

Following the non-jury verdict, both [Appellant] and TWH presented post-trial motions regarding the court's non-jury decision. [Appellant] filed a "Motion for New Trial as to liability only," which TWH opposed and the trial court denied[, ruling that Appellant lacked standing]. TWH presented a post-trial motion to mold the verdict to include a verdict on indemnity claims against Dr. Nahata and Dr. Ganjoo. Such relief was granted without opposition from Drs. Ganjoo and Nahata.

Meanwhile, TWH's contribution and indemnity claims against [Appellant] remained scheduled for trial to commence on February 10, 2020. However, within a month of jury selection, TWH filed a motion for summary judgment on its crossclaims against [Appellant]. TWH argued that through no fault of its own, it has been required to pay liabilities of [Appellant's] employees, Drs. Ganjoo and Nahata. [Appellant] responded by filing multiple supplemental pre-trial statements and its third motion for summary judgment. [Appellant] argued that TWH released its claims, could not prove its right to indemnity and was demanding an equitable remedy with unclean hands.

On February 5, 2020, the trial court issued a written decision denying [Appellant's and TWH's] competing motions for summary judgment. The trial court pointed to [Appellant's] Fifth Supplemental Pre-Trial Statement, filed within three weeks of the February trial date. In that filing, for the first time, [Appellant] identified its expert witnesses with regard to TWH's direct liability. The trial court ruled that such evidence could show TWH's active fault and defeat its indemnity claim.[5] Further, **the issue of**

_____

[5] The trial court additionally ruled:

At this pre-trial stage, a sufficient question of material fact is present as to whether [TWH] was negligent in supervising the quality of the medical care Mrs. McLaughlin received from [one of the named defendant physicians employed by TWH], Dr. [Thomas] Pirosko[,

*(Footnote Continued Next Page)*

- 6 -

**control over Drs. Ganjoo and Nahata remained a jury question. The possibility existed that both TWH and [Appellant] could be determined to have jointly controlled these physicians while they rendered substandard care to Mrs. McLaughlin**. The trial court ruled, that in such a circumstance, TWH may seek contribution from [Appellant].

Memorandum and Order, 7/15/20, at 1-6 (citations to record and original footnotes omitted; footnotes 2-5 added and emphasis added).

The trial court elaborated on Appellant and TWH's possible "joint control" of Drs. Ganjoo and Nahata, stating:

[N]either the MCARE Act nor common law precludes a finding that two parties may be vicariously liable for the negligent acts of a physician. The MCARE Act in permissive language provides that a hospital through "ostensible agency" principles "may" be vicariously liable for the acts of a physician. [40 P.S. § 1303.516, **supra**]. The MCARE Act does not provide that "ostensible agency" is the exclusive means for establishing vicarious liability for the negligent acts of a physician. [] A long-standing common law principle in Pennsylvania recognizes that a jury may properly find two defendants to be vicariously liable for the negligence of another. **Kissell v. Motor Age Transit Lines**, 357 Pa. 204, 53 A.2d 593 (1947). Such principle applies to a claim of professional medical negligence. **See McConnell v. Williams**, 361 Pa. 355, 65 A.2d 243 [(Pa. 1949),[6]] as cited in **Yorston v. Pennell**, 397

D.O.,] and [TWH's] nursing staff. In this circumstance, granting summary judgment on the issue of corporate liability is not appropriate. **Thompson v. Nason Hosp.**, 527 Pa. 330, 342-43, 591 A.2d 703, 709 (1991).

Memorandum and Order, 2/5/20, at 10 (footnote omitted).

[6] Our Supreme Court explained: "A person may be the servant of two masters, not joint employers, at one time as to one act, provided that the service to one does not involve abandonment of the service to the other[.]" **McConnell**, 65 A.2d at 245; **see also id.** at 247 ("a borrowed employee may, in the performance of a given act, be serving the interests of both his general employer and his temporary master."). The Court further stated:
*(Footnote Continued Next Page)*

- 7 -

Pa. 28, 39, 153 A.2d 255, 259-60 (1959), and **Tonsic v. Wagner**, 458 Pa. 246, 252, 329 A.2d 497, 500-501 (1974)[.] In this instance, [TWH] possesses sufficient evidence to establish [Appellant's] vicarious liability for the negligence of Drs. Ganjoo and Nahata. (**See** Trial EX. W-5 ¶ 2-8 and 15-18)

Memorandum and Order, 2/5/20, at 8 (footnotes in original omitted; footnote 6 added).

On February 21, 2020, TWH filed a motion for reconsideration of the February 5, 2020 order. TWH sought an order "awarding judgment as a matter of law in favor of TWH and against [Appellant] in the amount of any unsatisfied portion of the $17,263,159.33 verdict entered in favor of [TWH] and against [Drs.] Nahata … and [] Ganjoo[.]" Motion for Reconsideration, 2/21/20, at 1. Appellant filed a brief in opposition three days later.

On March 4, 2020, Appellant filed a motion requesting the court amend its interlocutory February 5, 2020 order denying the competing motions for summary judgment so that Appellant could file an immediate appeal.[7] Appellant asserted, pursuant to 42 Pa.C.S.A. § 702(b), that the order involved a controlling question of law as to which there is substantial ground for difference of opinion. Section 702(b) states:

---

"When different inferences can fairly be drawn from the evidence as to who is the controlling master of the borrowed employee at the time of the commission of the negligent act, it is for the jury, not the court, to determine the question of agency." **Id.** at 245-46. While the facts in this case differ from those in **McConnell**, the Supreme Court's reasoning is instructive.

[7] **See Ashdale v. Guidi Homes, Inc.**, 248 A.3d 521, at *7 (Pa. Super. Mar. 5, 2021) ("[A]n order denying summary judgment is ordinarily a non-appealable interlocutory order." (citation omitted)).

> **(b) Interlocutory appeals by permission.**-- When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, **shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion** and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

*Id.* (emphasis added); *see also* Pa.R.A.P. 1311(b) (governing petitions for permission to appeal from interlocutory orders). In support of the motion, Appellant asserted:

> [The trial] court incorrectly held that a vicariously liable party can pass its liability to another vicariously liable party through indemnity or contribution, and resolution of this question in [Appellant's] favor will eliminate the need to consider other issues[.]

Memorandum, 3/4/20, at 2.

The trial court thereafter issued its comprehensive memorandum and order detailing the history of the case, and ruling, *inter alia*, that TWH may seek to prove a claim for contribution from Appellant. ***See***, ***e.g.***, Memorandum and Order, 7/15/20, at 6 ("The possibility existed that both TWH and [Appellant] could be determined to have jointly controlled [Drs. Ganjoo and Nahata] while they rendered substandard care to Mrs. McLaughlin."). The trial court further concluded that TWH may seek to prove a claim for indemnity from Appellant.

The trial court also granted Appellant's motion for interlocutory appeal. It reasoned:

[A]s to professional medical negligence, the parties have not cited to and this trial court, independently, has not discovered an appellate court opinion that holds that a secondarily liable party may or may not seek indemnity from the actual employer of a negligent employee. For this reason, TWH's right to seek indemnity involves a controlling question of law as to which there is substantial ground for difference of opinion. [**See** 42 Pa.C.S.A. § 702(b), **supra**.]

* * *

Interlocutory review of TWH's right to seek indemnity against [Appellant] may materially advance the ultimate termination of this matter. ...

* * *

Additionally, a substantial ground for a difference of opinion exists concerning TWH's right to seek contribution from [Appellant]. In this case, Drs. Ganjoo and Nahata are undeniably the ostensible agents of TWH and the actual employees of [Appellant].

Recognizing that issues of agency and control exercised by joint employers require consideration by a jury in the setting of a medical negligence action, the trial court denied summary judgment. **See Kissell**, 53 A.2d at 595-96 [("Where it is not entirely clear who was the controlling master of the borrowed employe[e], and different inferences in that regard can fairly be drawn from the evidence, it is for the jury, not the court, to determine the question of agency." (citation and ellipses omitted))], and **Tonsic**, 329 A.2d at 501 [("Hospitals, as well as the operating surgeons, owe a duty to the patient. If that duty is breached under circumstances from which a jury could reasonably conclude that the negligent party was at the same time the servant of two masters, both masters may be liable.")] . . . . Specifically, the trial court ruled that TWH possessed a right of contribution against [Appellant], because [both Appellant and/or TWH] could be vicariously liable for the fault of Drs. Ganjoo and Nahata.

Memorandum and Order, 7/15/20, at 17-18 (citations modified); **see also id.**

at 8 ("[T]he law lacks full and clear development on the claims raised against

[Appellant], and trial is a certainty unless appellate authority springs forward to give the parties and this trial court clear direction.").

Finally, the trial court denied TWH's motion for reconsideration. ***See id.*** at 23.

On August 12, 2020, the Washington County Prothonotary entered judgment of $17,263,159.33 in favor of Plaintiffs and against TWH, Dr. Ganjoo and Dr. Nahata.

On August 26, 2020, Appellant filed in this Court a "petition for review," requesting permission to file an interlocutory appeal from the February 5, 2020 order. ***See*** Pa.R.A.P. 1311. Appellant claimed: "resolution of the gap in the law has become necessary to establish that a secondarily liable party cannot, as a matter of law, be the subject of an indemnity or contribution claim." Petition for Review, 8/26/20, at 17 n.6.

On October 26, 2020, this Court entered a *per curiam* order granting Appellant's petition for review, stating the matter "shall proceed before this Court as an appeal from the order entered February 5, 2020."

On appeal, Appellant presents the following issue:

> Can a secondarily liable party pass through its vicarious liability for the negligence of a tortfeasor to another secondarily liable party in the form of either contribution or indemnity?

Appellant's Brief at 2.

- 11 -

**Prevailing Law**

Appellant's issue presents a question of law; therefore, our standard of review is *de novo* and our scope of review is plenary. **Terra Firma Builders, LLC v. King**, 2021 Pa. LEXIS 1886, at *6, 2021 WL 1681341, at *3 (Pa. Apr. 29, 2021). It is well-settled that a trial court may grant summary judgment only in cases where the record contains no genuine issue of material fact, and it is "clear and free from doubt" that the moving party is entitled to judgment as a matter of law. **Bourgeois v. Snow Time, Inc.**, 242 A.3d 637, 649-50 (Pa. 2020) (citation omitted).

Appellant argues there is no law in Pennsylvania to provide for the transfer of "[v]icarious liability for the obligations of a common agent . . ., via common law indemnity or contribution, from one secondarily liable party to another secondarily liable party." Appellant's Brief at 20.

Preliminarily, we recognize, "[i]ndemnity and contribution are available against any defendant, even one the original plaintiff did not sue." **MIIX Ins. Co. v. Epstein**, 937 A.2d 469, 472 (Pa. Super. 2007). The Pennsylvania Supreme Court has explained that indemnity, a common law equitable remedy,

> shifts the **entire loss** from one who has been compelled, by reason of some legal obligation, to pay a judgment occasioned by the initial negligence of another who should bear it. It is **not a fault sharing mechanism**; it is a fault shifting mechanism where a defendant seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss.

***Willet v. Pa. Med. Catastrophe Loss Fund***, 702 A.2d 850, 854 (Pa. 1997) (citations, brackets and quotations omitted; emphasis added); ***see also Moran v. G. & W.H. Corson, Inc.***, 586 A.2d 416, 427 (Pa. Super. 1991) (*en banc*) ("Indemnity, as the more drastic remedy, is recognized in cases where community opinion would consider that in justice the responsibility should rest upon one defendant rather than the other." (citation, quotations and brackets omitted)).  Further, indemnity

> is a right which enures to a person who, **without active fault on his own part**, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is **only secondarily liable**.

***Builders Supply***, 77 A.2d at 370 (emphasis added).  The proper inquiry concerning a claim for indemnity is "whether the party seeking indemnity had **any part** in causing the injury." ***Sirianni v. Nugent Bros., Inc.***, 506 A.2d 868, 871 (Pa. 1986) (emphasis in original).

Contribution, on the other hand, is codified by statute – Pennsylvania's Uniform Contribution Among Tort-feasors Act (UCATA), 42 Pa.C.S.A. § 8321 *et seq.*  Contribution "requires those who have liability of a **concurrent** character under the relevant tort law to **share the loss** equally." ***Burch v. Sears, Roebuck & Co.***, 467 A.2d 615, 622 (Pa. Super. 1983) (emphasis added).  Like indemnity, the doctrine of contribution is based on equity. ***Straw v. Fair***, 187 A.3d 966, 1002 (Pa. Super. 2018); ***see also Puller v. Puller***, 110 A.2d 175, 177 (Pa. 1955) ("[C]ontribution is not a recovery for the tort [committed against the plaintiff,] but the enforcement of an equitable

duty to share liability for the wrong done."). A right of contribution exists when "a **joint tortfeasor** [] has discharged more than his *pro rata* share of a **common liability**[.]" *Id.* (emphasis added; citation omitted); *see also* 42 Pa.C.S.A. § 8324. In such situation, the party "may seek contribution from any other tortfeasor who contributed to the loss." *Straw*, 187 A.3d at 1002 (citation omitted). The UCATA defines "joint tortfeasors" as "two or more persons jointly or severally liable in tort for the same injury to persons or property, **whether or not judgment has been recovered against all or some of them**." 42 Pa.C.S.A. § 8322 (emphasis added). Regarding this statutory definition, this Court explained:

> The statutory language **does not limit the right of contribution to tortfeasors who have been guilty of negligence**. Contribution is available whenever two [or] more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed.

*Straw*, 187 A.3d at 1002 (emphasis added; citation omitted).

## Analysis

We first address whether TWH may lawfully seek contribution from Appellant, a secondarily liable party, for the negligence of Appellant's employees, Drs. Ganjoo and Nahata. Appellant repeatedly emphasizes it "did not contribute to the McLaughlins' injuries," and purportedly is not a "joint tortfeasor" under the UCATA or common law; thus, Appellant claims it cannot be held liable for contribution to TWH. Appellant's Brief at 20, 31, 36. Appellant contends the "burden of who satisfies the vicarious liability

obligations for a joint agent should fall on the principal that the plaintiff seeks to enforce that obligation against." ***Id.*** at 43-44. Appellant argues: "The UCATA has never been interpreted to include those parties who themselves did not contribute to a plaintiff's injuries." ***Id.*** at 36. Appellant further asserts the equities of this case disfavor a "new form of contribution" in Pennsylvania. ***Id.*** at 37; ***see also id.*** ("[T]he costs of [this] litigation outweigh its benefits and do nothing to further the ultimate goal of vicarious liability, which is to make sure the plaintiff is adequately compensated."). Finally, Appellant states:

> [I]f this Court is inclined to allow contribution between joint principals, then the trial court's decision to have a trial apportioning vicarious liability based on control should not be disturbed. Given the procedural posture of this case, the parties will have to return to litigate how apportionment is to be done, and which, if any, findings from the first trial are binding against [Appellant].

***Id.*** at 44.

Our analysis is supported by the trial court's scrupulous rationale. In determining that TWH may seek contribution from Appellant, the trial court explained:

> Drs. Ganjoo and Nahata are undeniably the ostensible agents of TWH and the actual employees of [Appellant]. (***See*** Verdict 10/11/19, Opinion and Order, 9/1/17)[.] Recognizing that issues of agency and control exercised by joint employers require consideration by a jury in the setting of a medical negligence action, the trial court denied summary judgment. ***See Kissell***, ***supra***, and ***Tonsic***, ***supra***[.] Specifically, the trial court ruled that TWH possessed a right of contribution against [Appellant], because each could be vicariously liable for the fault of Drs. Ganjoo and Nahata. With regard to TWH's contribution claim, the

trial court applied the holding in ***Sleasman v. Brooks***, 32 Pa. D. & C.3d 187, 194-95 (Pa. Com. Pl. 1984). No Pennsylvania Appellate Court has addressed ***Sleasman***.

    ***Sleasman*** rests on the conclusion that <u>two vicariously liable parties are effectively "joint tortfeasors.</u>" [***Sleasman*** held that <u>co-employers are "like joint tortfeasors, jointly and severally liable to plaintiff</u> to the extent of the employee's liability. It logically and sensibly follows that they are, also like joint tortfeasors, <u>subject to the rights and liabilities of contribution</u> *inter se*." ***Id.*** at 194-95 [(underline emphasis added)].

    ***Sleasman***'s holding and the trial court's application of it, may appear to be at odds with Pennsylvania appellate decisions that define the term "joint tortfeasor" differently. For instance, "joint tortfeasors are parties who either act together in committing a wrong or whose acts, if independent of each other, unite to form a single injury." ***L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.***, 777 A.2d 1090, 1095 (Pa. Super. 2001). Joint tortfeasors exist where two or more persons owe to any other the same duty **and by their common neglect**, such other is injured. ***LaZar v. RUR Indus., Inc.***, 487 A.2d 29, 32 (Pa. Super. 1985) [(emphasis added by trial court);] and ***see Crowell v. City of Philadelphia***, 613 A.2d 1178, 1181 (Pa. 1992) [()"Joint tortfeasor liability . . . arises when two or more persons **acting together** injure another. It is distinguished from vicarious liability in that liability attaches by virtue of the actions of each person as opposed to by operation of law." [(citation omitted))]. The Supreme Court has also held "…that an agent and its principal are not joint tortfeasors under UCATA when the liability of the principal is vicarious liability and is **not based upon the principal's independent actionable fault**." ***Mamalis v. Atlas Van Lines, Inc.***, 560 A.2d 1380, 1381 (Pa. 1989) (emphasis added).

    However, in the complex setting of this protracted medical negligence case, relying on targeted precedent such as ***Mamalis*** is not appropriate. As the Supreme Court later held, ***Mamalis*** "was directed to a simple fact pattern ***involving a single principal***, a single agent, a single event[.]" ***Maloney*** [***v. Valley Med. Facilities, Inc.***, 984 A.2d 478, 485 (Pa. 2009) (emphasis added by trial court)]. Such is not the facts of this dispute between TWH and [Appellant].

Critically, other authority exists that appears to support the *Sleasman* view that <u>two co-employers can be joint tortfeasors who may possess rights of contribution</u>. In at least three published opinions, the Superior Court has repeated:

[T]he UCATA . . . "is not geared only toward negligence situations." *McMeekin* [*v. Harry M. Stevens, Inc.*,] 530 A.2d [462,] 465 (Pa. Super. 1987). Rather, as this Court explained:

[Under the UCATA, "joint tortfeasors"] are defined as "two or more persons jointly or severally liable in tort for the same injury to persons or property." [42 Pa.C.S.A. § 8322] . . . **The statutory language does not limit the right of contribution to tortfeasors who have been guilty of negligence. Contribution is available whenever two [or] more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed**.

*Straw*, 187 A.3d at 1002 . . . (emphasis added); *McMeekin*, 530 A.2d [at] 465 [(citing *Svetz v. Land Tool Co.*, 513 A.2d 403[, 407] (Pa. Super. 1986)[)]. Vicarious liability is a theory of recovery that may be used to impute negligence. *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 597 (Pa. 2012). Further, the Supreme Court has held:

[A]lthough joint and several liability requires an indivisible injury for which two or more parties are partially responsible, **it is the indivisibility of the injury, rather than of culpability, that triggers joint liability**[.]

*Carrozza v. Greenbaum*, 916 A.2d 553, 556 (Pa. 2007) (emphasis added). Neither [Appellant] nor TWH has claimed that the tragic consequences the McLaughlins suffered and now endure [are] divisible.

Further, support for the existence of contribution claims like that asserted by TWH against [Appellant] has been recognized for over a half-century. In the Restatement (Second) of Agency § 317A (1958), one finds the following passage:

- 17 -

The right to contribution has been less frequently allowed in tort cases. In fact, it was formerly an almost universal rule that contribution should not be permitted between negligent or willful tortfeasors, and the innocent masters in such cases were denied contribution as if they themselves were guilty of the tortious conduct. **However, by statute or by judicial decision this earlier rule is gradually being changed, and, to the extent that tortfeasors are allowed contribution for expenditures made in satisfaction of a common tort claim, a master who has paid an injured person for harm done by his servant can recover from another master equally subject to liability**.

*Id.* [(emphasis added by trial court)]. <u>The question of joint liability between [Appellant] and TWH appears to be an open issue to be litigated at trial</u>.

The well-recognized purposes behind contribution support this view. The Superior Court has explained:

a tortfeasor's right to receive contribution from a joint tortfeasor **derives not from his liability to the claimant but rather from the equitable principle that once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other**. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the [UCATA] to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.

*Svetz*, 513 A.2d at 407 (emphasis added). The equitable underpinnings of contribution were not discarded by the enactment of the UCATA. ...

\* \* \*

From this trial [court]'s view, <u>the equities of this dispute drive the decision to put TWH's contribution claim to a jury</u>.

> Neither TWH, an ostensible employer, nor [Appellant], the actual employer, should be permitted to escape liability without a full and fair hearing. <u>The facts and circumstances surrounding who controlled Drs. Ganjoo and Nahata in their treatment of Mrs. McLaughlin should be determined. Then the financial burden should be apportioned accordingly</u>.

Memorandum and Order, 7/15/20, at 18-22 (citations modified; footnote omitted; underline emphasis added).

Upon careful consideration, we agree with the trial court's assessment of the facts of this case and existing law. Accordingly, we are not persuaded by Appellant's claim that a secondarily liable party has no legal right to seek contribution from another secondarily liable party. **See id.**; **see also Straw**, **supra** (stating the UCATA "does not limit the right of contribution to tortfeasors who have been guilty of negligence."); **Svetz**, **supra**. We further agree with the trial court that further evidentiary proceedings are warranted, and thus, remand to the trial court is warranted.

Next, we examine whether TWH is entitled to seek indemnity from Appellant. Appellant relies heavily on our Supreme Court's decision in **Builders Supply**, **supra**. Appellant emphasizes the Court's holding "that the right of a person vicariously or secondarily liable for a tort **to recover from one primarily liable has been universally recognized**." **Builders Supply**, 77 A.2d at 370 (emphasis added). Appellant then argues that in this case,

> There are no allegations that [Appellant] is primarily liable, and Pennsylvania law instructs that an employer is not primarily liable

- 19 -

when tortious acts are committed by its employees. ***Builders Supply Co.***, 77 A.2d at 370. Because [Appellant] cannot be a primary tortfeasor and indemnity under Pennsylvania law cannot be obtained against a secondarily liable party, the Trial Court erred in failing to dismiss TWH's indemnity claim against [Appellant].

Appellant's Brief at 26; ***see also id.*** at 25 ("[T]here is no dispute that only the employees, Dr. Nahata and Dr. Ganjoo, were active or primary tortfeasors."). Appellant further contends that equities militate against permitting TWH to seek indemnity from Appellant:

The application of indemnity would allow hospitals, such as TWH, to completely transfer the liabilities imposed on them by the Legislature [in the MCARE Act, ***supra***]. TWH's attempt to use common law indemnity to avoid *all* of its statutory responsibilities at the expense of [Appellant] is hardly an "equitable" outcome.

***Id.*** at 27 (emphasis in original). Finally, Appellant states:

TWH argues that because the McLaughlins' case has concluded, [Appellant], *who was barred from participating in the trial of the McLaughlin action*, must simply absolve TWH of its vicarious liability for Drs. Nahata and Ganjoo without being allowed to participate in a trial. This is not the purpose of vicarious liability.

Appellant's Reply Brief at 8-9 (emphasis in original).

Again, we find the trial court's estimation of the law persuasive. The court stated:

[Appellant's] application of ***Builders Supply***, [***supra***,] ***Burch***, [***supra***,] and ***Sirianni***, [***supra***,] appears unprecedented and does not necessarily square with the purposes of indemnity. Indemnity is a common law equitable remedy that is aimed at preventing an unjust result. ***See*** . . . ***Burch***, 467 A.2d at 622. In this instance, if the McLaughlins had included [Appellant] as an original defendant in this action, the right to proceed to trial against [Appellant] would be clear. Because the McLaughlins failed to do so in an action they filed two years after the offending

- 20 -

incidents of malpractice, [Appellant] has no sole liability to the McLaughlins.

However, [Appellant's] lack of sole liability to the McLaughlins does not preclude TWH's right to pursue its equitable remedies. As the Superior Court in **Burch** explained:

These remedies between defendants are available even against defendants whom the plaintiff does not sue, and their statute of limitations does not commence at the time of the plaintiff's injury. **Wnek v. Boyle**, 374 Pa. 27, 96 A.2d 857 (1953). **Thus, victims may not, by the timing of their complaint, choose which tortfeasor will pay, and defendants faced with the frequent occurrence of eleventh-hour lawsuits may still pursue their rightful equitable remedies against other tortfeasors. *Id.***

**Burch**, 467 A.2d [at] 622 [] (emphasis added). The combination of the McLaughlins' choice of defendants and the mechanical application of statutory ostensible agency principles should not compel TWH to pay for liabilities [Appellant's] employees created while acting within the course and scope of their employment. Denying TWH its "day in court" appears inequitable and unjust.

Within the **Builders Supply** opinion, itself, one finds support for TWH's right to seek indemnity from [Appellant]. The Court described indemnity as being dependent upon "a difference in the character or kind of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person." **Builders Supply**, 77 A.2d at 370. The Court then gave a series of examples where indemnity exists[, which] include the factual circumstances set forth in **Philadelphia Co. v. Central Traction Co.**, 30 A. 934, 936 (Pa. 1895). The Court explained:

Many other illustrations might, of course, be given, as, for example, where a person injured by the leakage of gas from a defective pipe recovered damages from the gas company which maintained the pipe; the gas company was held entitled to recover indemnity from a street railway company whose negligent excavation in the street had caused the pipe to break. **Philadelphia Co., supra**.

***Builders Supply***, 77 A.2d [at] 370-71. In ***Philadelphia Co.***, the offending acts of the street railway company were committed by its "**workmen**" who "filled in under and around it the earth which they had taken out." ***Philadelphia Co.***[, 30 A. at 936 (emphasis added by trial court)]. Thus, longstanding <u>precedent appears to support one corporate entity seeking indemnification against another corporate entity whose employees have been negligent</u>.

Memorandum and Order, 7/15/20, at 15-16 (footnotes omitted; citations modified; underline emphasis added).

The trial court further opined:

[TWH] possesses sufficient evidence to establish [Appellant's] vicarious liability for the negligence of Drs. Ganjoo and Nahata. (***See*** Trial EX. W-5 ¶ 2-8 and 15-18). However, <u>such evidence does not eliminate issues of fact regarding [TWH's] indemnity claim against [Appellant]</u>. As the Supreme Court explained in ***Yorston***[, ***supra***]:

> In determining whether a person is the servant of another it is necessary that he not only be subject to the latter's control or right of control with regard to the work to be done and the manner of performing it but that this work is to be performed on the business of the master or for his benefit. ***McGrath v. Edward G. Budd Manufacturing Co.***, 348 Pa. 619, 623, 36 A.2d 303, 305. Actual control, of course, is not essential. It is [the] right to control which is determinative. On the other hand, the right to supervise, even as to the work and the manner of performance, is not sufficient; otherwise a supervisory employee would be liable for the negligent act of another employee though he would not be the superior or master of that employee in the sense the law means it. Restatement (Second), Agency, § 220(1) (1958); ***Orris v. Roberts***, 392 Pa. 572, 141 A.2d 393.

***Yorston***, 153 A.2d 255, 259-60. The issue of "[w]hether the power of control was sole or joint" is a jury question. ***Tonsic***, 329 A.2d at 500.

Also, though [TWH's] right to indemnity against Drs. Nahata and Ganjoo has been determined [at the non-jury trial], [Appellant] was not a party to the trial. <u>To deny [Appellant] the opportunity to be heard constitutes a violation of due process</u> of law and results in an invalid judgment. ***Shay v. Flight C Helicopter Servs., Inc.***, 822 A.2d 1, 11 (Pa. Super. 2003) [("Lack of notice and an opportunity to be heard constitutes a violation of due process of law and results in an invalid judgment.")], and ***MIIX Ins. Co.***, 937 A.2d at 473 [(same)].

Memorandum and Order, 2/5/20, at 8-9 (footnotes omitted; underline emphasis added; some citations modified).

We are in agreement with the trial court, and thus TWH may **seek to prove** its right to indemnity from Appellant at trial. In so holding, we reiterate that Appellant identified in its trial court filings, "expert witnesses with regard to TWH's direct liability . . . that . . . **could show TWH's active fault** and defeat its indemnity claim." Memorandum and Order, 7/15/20, at 6 (emphasis added).

Finally, we find no merit to TWH's extensive argument that the trial court erred in failing to grant summary judgment in its favor and against Appellant. ***See*** TWH Brief at 13, 17-18, 27, 31-36, 43, 46-47; ***see also id.*** at 15 ("[T]he [t]rial [c]ourt has inappropriately acquiesced to [Appellant's] relentless demand to interject questions of indemnity, contribution and the law of borrowed servants," none of which are properly at issue). TWH did not appeal from the denial of its summary judgment motion. ***See, e.g., Mortg. Elec. Registration Sys. v. Ralich***, 982 A.2d 77, 79 n.2 (Pa. Super. 2009) (this Court will not address challenges where no appeal was filed). Moreover, the

- 23 -

issue this Court certified for interlocutory review — *i.e.*, contribution and indemnity in the context of secondarily liable parties — does not encompass TWH's issue challenging the denial of its motion for summary judgment. ***See, e.g., Wayne M. Chiurazzi Law Inc. v. MRO Corp.***, 97 A.3d 275, 296 (Pa. 2014) ("Once an interlocutory order is certified and accepted, it neither confers a right, nor extends an invitation, to a party to add other interlocutory issues, not passed upon below, to the appeal.").

In conclusion, we affirm the trial court with the understanding that the Superior Court is an error-correcting court, and "[i]t is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." ***John v. Philadelphia Pizza Team, Inc.***, 209 A.3d 380, 386 (Pa. Super. 2019) (citation omitted), *appeal denied*, 221 A.3d 1205 (Pa. 2019).

For the above reasons, we discern no error by the trial court, affirm the February 5, 2020 order, and remand for further proceedings consistent with this decision.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  07/28/2021