**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| ALYSSA MCLAUGHLIN AND WILLIAM MCLAUGHLIN | : | No. 7 WAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered July 28, |
| v. | : | 2021 at No. 1115 WDA 2020, |
| | : | affirming the Order of the Court of |
| | : | Common Pleas of Washington |
| AMIT NAHATA, M.D.; KATHRYN SIMONS, | : | County entered February 5, 2020 at |
| M.D.; ANNE F. JOSIAH, M.D.; THOMAS | : | No. 2015-3223 and remanding. |
| PIROSKO, D.O.; JESSIE GANJOO, M.D.; | : | |
| ASHLEY BERKLEY, D.O.; THE | : | ARGUED: October 26, 2022 |
| WASHINGTON HOSPITAL; AND | : | |
| WASHINGTON HEALTH SYSTEM | : | |
| WASHINGTON HOSPITAL | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIALYSIS CLINIC, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: DIALYSIS CLINIC, INC. | : | |

*Justice Brobson delivers the Opinion of the Court with regard to Parts I, II, III.A, and III.C, and an opinion in support of a partial affirmance and a remand with instructions joined by Justices Dougherty and Mundy with respect to Parts III.B. and IV.*

**OPINION**

**JUSTICE BROBSON**                                        **DECIDED: July 28, 2023**

In this discretionary appeal, we must decide whether, as a matter of law, the

Washington Hospital (the Hospital) is permitted to seek contribution and/or indemnity from

Dialysis Clinic, Inc. (DCI), for negligence committed by DCI's employees, Jessie Ganjoo, M.D., and Amit Nahata, M.D. (collectively, the Doctors), while working as physicians with staff privileges at the Hospital.[1] The Court of Common Pleas of Washington County (trial court) and the Superior Court both concluded that, although traditional principles of contribution and indemnity did not apply cleanly to the particular circumstances at issue, those equitable principles of law, nevertheless, permit the Hospital to seek both contribution and indemnity from DCI. As a result, the trial court denied DCI's motion for summary relief, and the Superior Court affirmed. For the reasons stated in parts I, II, III.A, and III.C below, we hold unanimously that, if the Hospital and DCI are determined to be vicariously liable for the negligence of the Doctors, the law permits the Hospital to seek contribution from DCI. This Court, however, is evenly divided on the question of whether the Hospital may also be entitled to seek indemnification from DCI.[2] Given this Court's decision on contribution and inability to reach a decision on indemnity, the order of the Superior Court is affirmed on those questions.[3] Furthermore, because additional factual findings in this matter are necessary, we remand this matter to the Superior Court with instructions to remand it to the trial court for further proceedings.

---

[1] The Washington Hospital Health System is a corporate entity related to the Hospital, and both parties, therefore, will be referred to as "the Hospital."

[2] This author would hold that the law does not permit a party that is vicariously liable in tort to obtain indemnity from another party that is vicariously liable in tort for a common agent, such that the Hospital would not be able to obtain indemnification from DCI. Justice Wecht writes separately to set forth a basis for reaching the contrary conclusion.

[3] *See Creamer v. Twelve Common Pleas Judges*, 281 A.2d 57, 58 (Pa. 1971) ("The principle is well established in this Commonwealth as well as many other jurisdictions that, when an appellate court is equally divided, the judgment, order[,] or decree of the court below will be affirmed.").

# I. BACKGROUND[4]

## A. Relevant Facts

As indicated above, during their employment with DCI, the Doctors maintained staff privileges and worked at the Hospital. In 2013, Alyssa McLaughlin was admitted to the Hospital and received treatment from, among other medical staff, the Doctors, Kathryn Simons, M.D., Anne F. Josiah, M.D., Thomas Pirosko, D.O., and Ashely Berkley, D.O. At some point during or after that treatment, Ms. McLaughlin sustained severe and permanent neurological injuries. Attributing those injuries to negligence in her treatment, Ms. McLaughlin and her husband, William McLaughlin (collectively, the McLaughlins), initiated an action against the Doctors, the Hospital, and the other physicians noted above who were responsible for her care.

Dr. Berkley subsequently filed a motion to join DCI to the action as an additional defendant on the ground that it was the Doctors' actual employer. Thereafter, the Hospital filed a crossclaim against DCI seeking, *inter alia*, contribution and indemnity[5] for any liability the Hospital incurred. (Reproduced Record (R.R.) at 2784a-87a.) The trial court denied DCI's subsequent efforts to gain dispositive relief and avoid trial on the ground

---

[4] We note at the outset that the factual and procedural background of this matter is extensive, and the parties continue to dispute its specifics before this Court. Given our ultimate disposition that further factual findings in the trial court are necessary, we limit our recitation of the background to the more undisputed details as represented by the parties and in the opinions below as are necessary to resolve the narrow questions on which this Court granted allocatur. To the extent the parties continue to dispute the facts, such disputes can be addressed upon remand in light of this Opinion.

[5] Generally, indemnity "is a right which [i]nures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Builders Supply Co. v. McCabe*, 77 A.2d 368, 370 (Pa. 1951). Contribution, on the other hand, permits a party that has discharged a common liability to recover from another liable party. *See Swartz v. Sunderland*, 169 A.2d 289, 290-91 (Pa. 1961).

that it was not vicariously liable as the employer of the Doctors, reasoning that it was "clear from the record that [the Doctors] are employees of" DCI.[6] (*See* Trial Ct. Op., 7/15/2020, at 2; R.R. at 2a (emphasis omitted).) The ensuing litigation between DCI and the Hospital on issues of contribution and indemnity, however, soon overshadowed and delayed any progress on the McLaughlins' claims.[7] As a result, the trial court severed the Hospital's crossclaim for contribution and indemnity from the McLaughlins' claims and ordered that the contribution and indemnity issues would be resolved at separate trials.

Prior to trial on the McLaughlins' claims, the McLaughlins entered a stipulation to dismiss their claims of negligence against all of the named physicians apart from the Doctors. (*See* Trial Ct. Op., 9/10/2019, at 2.) The McLaughlins also agreed to dismiss all of their claims against the Hospital apart from "claims of ostensible agency" for liability arising from the conduct of the Doctors.[8] (*Id.* at 2-3.) In an opinion and order, the trial

---

[6] Under the principle of vicarious liability, "the corporation, not the employee, is liable for acts committed by the employee in the course of employment." *Tayar v. Camelback Ski Corp., Inc.*, 47 A.3d 1190, 1196 (Pa. 2012).

[7] Indeed, the trial court noted that "pre-trial litigation was dominated by recurring battles between [the Hospital] and DCI regarding the sufficiency of crossclaims pleaded, discovery of related insurance matters[,] and DCI's potential liability for indemnity and contribution." (Trial Ct. Op., 7/15/2020, at 5.)

[8] Section 516 of the Medical Care Availability and Reduction of Error (Mcare) Act (MCARE Act), Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. § 1303.516, provides:

> (a) Vicarious liability.--A hospital may be held vicariously liable for the acts of another health care provider through principles of ostensible agency only if the evidence shows that:
>
> > (1) a reasonably prudent person in the patient's position would be justified in the belief that the care in question was being rendered by the hospital or its agents; or
> >
> > (2) the care in question was advertised or otherwise represented to the patient as care being rendered by the hospital or its agents.

(continued…)

court accepted those stipulations as binding.  (*See id.* at 3-5 (quoting *Longenecker v. Matway*, 462 A.2d 261, 263 (Pa. Super. 1983) ("It is well established that the parties, by stipulation, are free to bind themselves on all matters not affecting jurisdiction and prerogatives of the court and that the court has the power to enforce stipulations.")).)

The case between the McLaughlins, the Doctors, and the Hospital then proceeded to a bench trial, after which the trial court concluded that the Doctors were negligent in their treatment of Ms. McLaughlin.  The trial court's findings also noted that the McLaughlins had discontinued their claims of negligence against the Hospital but that the parties agreed that the Doctors were the ostensible agents of the Hospital.  The trial court then entered a verdict against the Doctors and the Hospital, finding that the Doctors were negligent in their treatment of Ms. McLaughlin and that the Doctors were the ostensible agents of the Hospital and awarding the McLaughlins approximately $15 million in damages.  The McLaughlins filed an uncontested post-trial motion, which the trial court granted, adding delay damages for a total verdict award of approximately $17 million. The Hospital subsequently filed a motion seeking indemnity from the Doctors, which the trial court granted without objection.[9]  DCI was not permitted to participate at the bench trial, and it was not a party to the stipulations.

## B. Trial Court Disposition

The Hospital's crossclaim for indemnity and contribution against DCI, meanwhile, remained scheduled for trial.  Within a month of jury selection, however, the Hospital filed

---

(b) Staff privileges.--Evidence that a physician holds staff privileges at a hospital shall be insufficient to establish vicarious liability through principles of ostensible agency unless the claimant meets the requirements of subsection (a)(1) or (2).

[9] After obtaining indemnity, the Hospital received from the Doctors' insurance coverage the maximum limit of the Doctors' coverage, the amount of which is somewhat unclear from the record.  The Hospital now seeks to recover from DCI any difference between that amount and the full amount of the verdict.

a motion for summary judgment, arguing that the Doctors were operating within the course and scope of their employment with DCI at the time they negligently treated Ms. McLaughlin and "that[,] through no fault of its own[, the Hospital had] been required to pay [the] liabilities of DCI's employees." (Trial Ct. Op., 2/5/2020, at 3.) DCI responded by filing its own motion for summary judgment, wherein it contended, *inter alia*, that the Hospital could not prove its right to indemnity or contribution from DCI under the law.

Specifically, DCI noted that indemnity is a "fault-shifting mechanism" that did not permit a secondarily liable party to shift its blame to another secondarily liable party. (R.R. at 130a (quoting *Bird Hill Farms, Inc. v. U.S. Cargo & Courier Serv., Inc.*, 845 A.2d 900, 908 (Pa. Super. 2004)).) Further, DCI explained that the Uniform Contribution Among Tort-feasors Act (UCATA)[10] governs contribution rules in Pennsylvania, and, under that statute, DCI was not a "joint tort-feasor" subject to contribution. (*Id.* at 135a-36a (quoting 42 Pa. C.S. § 8322 (defining "joint tort-feasors" as "two or more persons jointly or severally liable in tort for the same injury to persons or property"), and *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789, 791 (Pa. Super. 1987) ("Two actors are jointly liable for an injury if their conduct causes a single harm which cannot be apportioned, even though the actors may have acted independently.")) (internal quotations

---

[10] 42 Pa. C.S. §§ 8321-27. Pennsylvania was one of the early states to adopt the 1939 version of the Uniform Contribution Among Tortfeasors Act (Uniform Act). *See Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1382 (Pa. 1989); *see also, inter alia, Saranillio v. Silva*, 889 P.2d 685, 693-95 (Haw. 1995); *Chilcote v. Von Der Ahe Van Lines*, 476 A.2d 204, 208-09 (Md. 1984). The Uniform Act was "designed to embody a common policy expressive of the tendency, apparent in the law, to abandon the common-law rule denying the right of contribution between joint tortfeasors." W.E. Shipley, Annotation, *Uniform Contribution Among Tortfeasors Act*, 34 A.L.R.2d 1107, § 1 (1954). "Under the Statutory Construction Act, 'an implication alone cannot be interpreted as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded.'" *Roverano v. John Crane, Inc.*, 226 A.3d 526, 538 (Pa. 2020) (quoting *In re Rodriguez*, 900 A.2d 341, 344 (Pa. 2003)). Given that UCATA's express purpose was to preempt common law concerning contribution, UCATA's rules apply here.

and alterations omitted), *appeal denied*, 546 A.2d 622 (Pa. 1988)).) Accordingly, DCI requested that the trial court grant its motion for summary judgment and dismiss the Hospital's crossclaim with prejudice.

On February 5, 2020, the trial court issued an order denying both motions for summary judgment. In an accompanying opinion, the trial court reasoned that, contrary to DCI's contentions, the law supported the Hospital's right to seek indemnity and contribution from DCI as the Doctors' actual employer, but questions of material fact remained as to whether either or both of the parties exercised control over the Doctors. (*See* Trial Ct. Op., 2/5/2020, at 6-11 (citing, *inter alia*, *Burch v. Sears, Roebuck & Co.*, 467 A.2d 615, 622 (Pa. Super. 1983) (noting that contribution and indemnity "are available even against defendants whom the plaintiff does not sue"), and *Yorston v. Pennell*, 153 A.2d 255, 259-60 (Pa. 1959) ("In determining whether a person is the servant of another[,] it is necessary that he not only be subject to the latter's control or right of control with regard to the work to be done and the manner of performing it[,] but that this work is to be performed on the business of the master or for his benefit.")).) Accordingly, the trial court concluded that summary judgment was inappropriate as to either party, and it directed that the matter would proceed to trial.

DCI subsequently filed a motion requesting that the trial court amend its order so that DCI could file an interlocutory appeal by permission pursuant to Section 702(b) of the Judicial Code, 42 Pa. C.S. § 702(b).[11] Specifically, DCI asserted that the trial court

_____

[11] Section 702(b) of the Judicial Code provides:

> Interlocutory appeals by permission.--When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the

(continued…)

"incorrectly held that a vicariously liable party can pass its liability to another vicariously liable party through indemnity or contribution," which DCI alleged constituted a "controlling question[] of law as to which there [wa]s substantial ground for difference of opinion." (R.R. at 410a-11a (citing 42 Pa. C.S. § 702(b)).) The Hospital also filed a motion for reconsideration of the trial court's order, seeking "an order awarding judgment as a matter of law in favor of [the Hospital] and against DCI in the amount of any unsatisfied portion" of the verdict rendered against the Doctors. (*Id.* at 178a.)

On July 15, 2020, the trial court issued an order granting DCI's motion to amend its February 5, 2020 order to allow an interlocutory appeal by permission and denying the Hospital's motion for reconsideration. In a supporting opinion, the trial court reiterated and expanded upon its position that the Hospital could seek to prove its right to indemnity and contribution from DCI. The trial court agreed with DCI, however, that there was substantial ground for difference of opinion as to the law concerning indemnity and contribution between two principals that are vicariously liable in tort for a common agent. As a result, the trial court amended its February 5, 2020 order so that DCI could file an interlocutory appeal of those issues pursuant to Section 702(b) of the Judicial Code.

### C. Superior Court Proceedings

DCI subsequently filed a "petition for review" in the Superior Court, requesting permission to file an interlocutory appeal from the trial court's February 5, 2020 order. Therein, DCI claimed that "resolution of the gap in the law has become necessary to establish that a secondarily liable party cannot, as a matter of law, be the subject of an indemnity or contribution claim." *McLaughlin v. Nahata*, 260 A.3d 222, 229 (Pa. Super. 2021). The Superior Court entered a *per curiam* order granting DCI's petition.

---

matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

In its brief on appeal, DCI framed its issue for review, as follows: "Can a secondarily liable party pass through its vicarious liability for the negligence of a tortfeasor to another secondarily liable party in the form of either contribution or indemnity?" (DCI Superior Ct. Br. at 2.)

Agreeing almost entirely with the trial court's rationale that the Hospital could seek to prove its right to indemnity and contribution from DCI, the Superior Court affirmed.[12] Specifically, the Superior Court pointed out that UCATA "does not limit the right of contribution to tortfeasors who have been guilty of negligence." *Id.* at 233 (quoting *Straw v. Fair*, 187 A.3d 966, 1002 (Pa. Super. 2018), *appeal denied*, 202 A.3d 51 (Pa. 2019)). The Superior Court further echoed the trial court's reasoning that DCI's application of this Court's precedent concerning indemnity appeared unprecedented, and it agreed that there was some authority supporting the right of a corporate entity to seek indemnity from "another corporate entity whose employees have been negligent." *Id.* at 234-35 (emphasis omitted) (citing, *inter alia*, *Philadelphia Co. v. Central Traction Co.*, 30 A. 934 (Pa. 1895)). In so holding, however, the Superior Court pointed out that DCI had identified "expert witnesses with regard to [the Hospital's] direct liability that *could show [the Hospital's] active fault* and defeat its indemnity claim." *Id.* at 236 (alterations omitted) (emphasis in original) (quoting Trial Ct. Op., 7/15/2020, at 6).[13]

---

[12] Indeed, the Superior Court's opinion consisted primarily of quoted text from the trial court's memorandum opinions issued in support of the trial court's February 5, 2020, and July 15, 2020 orders.

[13] Additionally, the Superior Court rejected the Hospital's "extensive argument that the trial court erred in failing to grant summary judgment in its favor and against" DCI on a theory of *respondeat superior* given that it was undisputed that DCI was the Doctors' actual employer. *McLaughlin*, 260 A.3d at 236. Rather, the Superior Court noted that the Hospital did not appeal from the trial court's denial of its motion for summary judgment, and the issue the Superior Court "certified for interlocutory review—*i.e.*, contribution and indemnity in the context of secondarily liable parties—d[id] not encompass" the Hospital's alternative claim. *Id.*

Finally, the Superior Court observed that it was affirming the trial court's order with the understanding that it is an "error-correcting court, and 'it is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines.'" *Id.* (alteration omitted) (quoting *John v. Phila. Pizza Team, Inc.*, 209 A.3d 380, 386 (Pa. Super.), *appeal denied*, 221 A.3d 1205 (Pa. 2019)). Rather, the Superior Court observed that those duties and responsibilities are reserved to this Court. Accordingly, the Superior Court affirmed the trial court's order and remanded the matter to the trial court for further proceedings consistent with its decision.

## II. ISSUES

DCI filed a petition seeking this Court's discretionary review, which we granted to consider the following issues, as stated by DCI:

> (1) Did the Superior Court err when it affirmed the [t]rial [c]ourt's expansion of causes of action not recognized under Pennsylvania law on grounds that the Superior Court could not reverse the [t]rial [c]ourt's expansion of causes of action where there is [an] absence of Supreme Court precedent?
>
> (2) Did the Superior Court err by permitting the . . . Hospital to pursue an indemnity claim against [DCI], an admittedly non-negligent secondarily (vicariously) liable party, which is inconsistent with the established law of Pennsylvania that permits indemnity claims only against actively negligent parties, while simultaneously recognizing that the [t]rial [c]ourt expanded Pennsylvania [l]aw?
>
> (3) Did the Superior Court err by permitting the . . . Hospital to pursue a contribution claim against DCI, a party whom the . . . Hospital specifically admits is not a tortfeasor, despite the fact that [UCATA] and precedential case law only allow for contribution among tortfeasors?

*McLaughlin v. Nahata*, 273 A.3d 514 (Pa. 2022) (per curiam).

## III. DISCUSSION[14]

At the outset, it is significant to appreciate that this matter comes before this Court on the denial of DCI's motion for summary judgment and that, at this stage of the

---

[14] We have reordered DCI's issues for purposes of this Opinion.

proceedings, there appears to be some question of material fact concerning the liability status of the parties.[15]  More specifically, DCI presented evidence in the trial court prior to filing its motion for summary judgment suggesting that the Hospital is *directly* liable as a negligent party.  DCI also disputed its vicarious liability for the negligence of Doctors. *See McLaughlin*, 260 A.3d at 225 ("[DCI] then filed its answer, admitting that it executed employment agreements with [the Doctors] but denying that it employed those physicians at times material to [the Doctors' negligent treatment of Ms. McLaughlin].").  Nonetheless, viewing the evidence in the light most favorable to the Hospital as the nonmoving party, as was required, the courts below clearly *assumed* that the Hospital and DCI are vicariously liable for the negligence of the Doctors via principles of ostensible agency through the MCARE Act and *respondeat superior*, respectively.

Given that those critical issues still need to be resolved, however, we are limited in our ability to *conclude* that the Hospital and DCI are both vicariously liable for the negligence of the Doctors.[16]  As such, given the odd posture of this appeal, this Opinion merely pronounces the law relative to the issues presented, which can essentially be reduced to a single question:  Does the law permit a party that is vicariously liable in tort to seek indemnity or contribution from a party that is also vicariously liable in tort for a common agent?  As a result, we leave for the trial court to decide any issues of fact

---

[15] Whether summary judgment is warranted constitutes a question of law, and this Court's standard of review, therefore, is *de novo* and our scope of review is plenary. *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1182 (Pa. 2010).  Summary judgment is only appropriate where, viewing the evidence in the light most favorable to the non-moving party, the record demonstrates there are no genuine questions of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1175 n.1, 1182.

[16] Furthermore, because DCI was not permitted to participate at the McLaughlins' negligence trial, denying DCI an opportunity to be heard on the foregoing issues of liability may constitute a violation of due process.  *See Dep't of Transp., Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1064 (Pa. 1996) (recognizing "essential requisites" of procedural due process are "notice and meaningful opportunity to be heard").

concerning the direct or vicarious liability of the Hospital and DCI and how this Opinion impacts the ultimate disposition of this matter.[17, 18]

## A. Contribution

DCI contends that the courts below erred in holding that the Hospital is permitted to seek contribution from DCI because contribution is only available among "joint tort-feasors" as defined by UCATA, and DCI claims that two principals that are vicariously liable in tort for a common agent do not meet that definition. Rather, DCI

---

[17] To resolve the issues presented, it is necessary for this Court to engage in statutory interpretation. To that end, we are guided by the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa. C.S. §§ 1501-1991, which provides that the object of all statutory interpretation "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). Generally, the plain language of the statute "provides the best indication of legislative intent." *Miller v. Cnty. of Centre*, 173 A.3d 1162, 1168 (Pa. 2017). If the statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then "we cannot disregard the letter of the statute under the pretext of pursuing its spirit." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 985 A.2d 678, 684 (Pa. 2009) (citing 1 Pa. C.S. § 1921(b)).

[18] *Amicus* Hospital and Healthsystem Association of Pennsylvania filed a brief in support of the Hospital, wherein it asserts, *inter alia*, that public policy supports permitting hospitals to seek contribution and indemnity from the actual employer of independent contractors, because, otherwise, "a hospital would bear the brunt of malpractice judgments simply because the hospital provided a facility where procedures took place, but the true employers of the negligent providers would bear no financial responsibility for the tortious acts of their agents." (*Amicus* Br. at 3.) Rather, *Amicus* contends that the policy reasoning inherent in the concept of ostensible agency and the MCARE Act calls for *expanding* "the entities from which a damages award can be sought" rather than imposing a restriction on a plaintiff's ability to seek compensation. (*Id.* at 6.) Further, *Amicus* insists that DCI's positions have no basis in the MCARE Act or this Court's decisions, and that denying DCI relief in this matter would be consistent with this Court's interpretation of the MCARE Act "as serving the dual purpose of protecting a patient's right to recover for malpractice while also ensuring that healthcare providers can obtain medical malpractice insurance at reasonable rates." (*Id.* at 7.) Finally, *Amicus* emphasizes that hospital patients in Pennsylvania will benefit from a ruling in favor of the Hospital, because if hospitals will face "essentially limitless liability for medical malpractice" by independent contractors, hospitals will be forced to reconsider such relationships to the detriment of individuals seeking healthcare. (*Id.* at 17.) As such, *Amicus* asks this Court to rule in favor of the Hospital in order to avoid the near certain harm that will otherwise occur to both hospitals and patients in Pennsylvania.

observes that this Court explicitly held in *Mamalis* that "an agent and its principal are not joint tortfeasors under UCATA when the liability of the principal is vicarious liability and is not based upon the principal's independent actionable fault." (DCI Br. at 42 (quoting *Mamalis*, 560 A.2d at 1381).) DCI notes that, in so holding, this Court explained:

> The system of contribution among joint tortfeasors, of which [UCATA's] apportionment rules are a key component, *has arisen completely apart from the system of vicarious liability and indemnity* and meets an entirely distinct problem: how to compensate an injury inflicted by the acts of more than one tortfeasor. Unlike the liability of a principal, *the liability of a joint tortfeasor is direct (because the tortfeasor actually contributed to the plaintiff's injury)* and divisible (since the conduct of at least one other also contributed to the injury).

(*Id.* at 42-43 (emphasis in original) (quoting *Mamalis*, 560 A.2d at 1383).)

Relying on *Mamalis*, DCI maintains that parties that did not *directly* contribute to a plaintiff's injuries cannot be liable for contribution under UCATA—*i.e.*, that two vicariously liable parties cannot be "joint tort-feasors." Further, DCI insists that *Mamalis* is the premier authority on this issue and that there is no other indication that the General Assembly intended for UCATA to be interpreted differently. In fact, DCI points out that the Hospital admitted in a filing in the trial court that "DCI is not a joint tortfeasor." (*Id.* at 40 (emphasis omitted) (quoting R.R. at 1937a).) Accordingly, DCI contends that contribution among secondarily liable parties is a nonexistent claim.

Notwithstanding those assertions, DCI acknowledges that the Court of Common Pleas of Somerset County concluded in *Sleasman v. Brooks*, 32 Pa. D. & C.3d 187 (Pa. Com. Pls. 1984), that co-employers of a negligent defendant are subject to contribution:

> Hence, co-employers are, like joint tortfeasors, jointly and severally liable to plaintiff to the extent of the employee's liability. It logically and sensibly follows that they are, also like joint tortfeasors, subject to the rights and liabilities of contribution *inter se*.

(*Id.* at 43 (citation omitted) (quoting *Sleasman*, 32 Pa. D. & C.3d at 195).) But DCI insists that *Sleasman* did not consider that contribution in Pennsylvania is governed by UCATA and that the law of contribution cannot be expanded merely at will. DCI likewise concedes that Section 317(A) of the Restatement (Second) of Agency provides limited support for the right of contribution among secondarily liable parties, but it observes that Section 317(A) has not been relied upon by any appellate court in the United States, nor was Section 317(A) carried over to the Restatement (Third) of Agency. Consequently, DCI contends that this Court should not follow the instruction provided by either the Restatement (Second) of Agency or *Sleasman*.

DCI also distinguishes the Superior Court's decisions of *Svetz for Svetz v. Land Tool Co.*, 513 A.2d 403, 407 (Pa. Super. 1986), *appeal denied*, 527 A.2d 544 (Pa. 1987), and *Straw*, *supra*, which the trial court relied on for the proposition that the theory of liability is irrelevant in determining whether two defendants can be subject to contribution under UCATA. In *Svetz*, DCI observes that the Superior Court concluded that two defendants that were strictly liable to a plaintiff in a products liability action were subject to contribution under UCATA. (DCI Br. at 44 (quoting *Svetz*, 513 A.2d at 407 ("So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under [UCATA] to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.")).) DCI points out, however, that unlike vicariously liable parties, the defendants in *Svetz* directly contributed to the plaintiff's injuries, which caused them to be "joint tort-feasors" under UCATA.

Similarly, in *Straw*, DCI notes that the Superior Court concluded that contribution was permissible under UCATA between a defendant liable under a negligence theory and one under a recklessness theory. DCI maintains, however, that the Superior Court's decision there was premised not on the theory of liability but on the principle that it would

be inequitable to allow one tortfeasor to pay more than its fair share of liability to a plaintiff. Given that there is no "fair share" to be apportioned between two secondarily liable parties that did not directly contribute to an injury, DCI insists that *Straw* is inapposite. (*Id.* at 45.)

In support of its right to seek contribution on remand, the Hospital observes that contribution is based upon equitable principles establishing that, "once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other." (Hospital Br. at 30 (quoting *McMeekin v. Harry M. Stevens, Inc.*, 530 A.2d 462, 465 (Pa. Super. 1987), *appeal denied*, 541 A.2d 746 (Pa. 1988)).) In the present case, the Hospital insists that it is liable for the Doctors' negligence only by operation of law and that it did not contribute to the Doctors' negligence. It reiterates, rather, that "the business of DCI, carried out by its employed physicians, is the conduct that caused the [McLaughlins'] loss." (*Id.* at 29.) As a result, the Hospital contends that DCI is erroneously insisting that a passively liable party should be precluded from pursuing its equitable remedy of contribution. Accordingly, the Hospital emphasizes that a fact-specific inquiry on remand would be necessary under the proper application of contribution principles to determine liability and achieve an equitable result.

DCI correctly sets forth that contribution principles in Pennsylvania are governed by UCATA, which provides that "[t]he right of contribution exists among joint tort-feasors." 42 Pa. C.S. § 8324(a). DCI is likewise correct that this Court opined in *Mamalis* that UCATA is generally concerned with joint tortfeasors as that term is traditionally understood to concern *direct* liability that is divisible between multiple actors—*e.g.*, two parties, acting in concert, negligently injure another. *See Mamalis*, 560 A.2d at 1383. We disagree with DCI's primary contention, however, that the contribution rules set forth in

UCATA do not allow for contribution between two parties that are vicariously liable in tort for a common agent.

As noted, Section 8322 of UCATA, 42 Pa. C.S. § 8322, provides that "'joint tort-feasors' means two or more persons jointly *or* severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." (Emphasis added.) Contrary to DCI's contentions, this definition of "joint tort-feasors" is "exceedingly broad and goes beyond the traditional meaning of the term." *Saranillio*, 889 P.2d at 64 (quoting *Holve v. Draper*, 505 P.2d 1265, 1267 (Idaho 1973)). For this reason, we are compelled to return to the principle delineated in *Straw* and other cases of the Superior Court interpreting Section 8322: "[Section 8322] does not limit the right of contribution to tortfeasors who have been guilty of negligence[; rather, c]ontribution is available *whenever two or more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed*." *Straw*, 187 A.3d at 1002 (alteration omitted) (emphasis added). Stated differently, in considering whether a party is a joint tortfeasor under Section 8322, "[t]he [b]asis [o]f liability is not relevant, nor is the relationship among those liable for the tort." *Blackshear v. Clark*, 391 A.2d 747, 748 (Del. 1978).

There also is no mention in the text of Section 8322 of UCATA or elsewhere in its provisions that vicariously liable parties are expressly excluded from the definition of "joint tort-feasors." Rather, Section 8322 merely asks whether the parties are jointly *or* severally liable in tort for the same injury. Joint liability is defined as "[l]iability shared by two or more parties," and several liability is defined as "[l]iability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the other liable parties." Black's Law Dictionary, at 1098 (11th ed. 2019).

As this Court has observed,

[i]n the context of vicarious liability, a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligent acts and other malfeasances of his agent, even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment. This rule of liability is based on the premise that it is more reasonable for a principal, who has placed the agent in the position of trust and confidence, to be the one to suffer from the wrongful act of a third person, as opposed to an innocent stranger.

*Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 460 (Pa. 2001) (citations omitted). A vicariously liable party generally is responsible for 100 percent of the damages at issue. *See Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 489 (Pa. 2009).

Thus, in light of the foregoing, two parties that are vicariously liable for a common agent would be jointly liable because they would share in the full extent of the liability, and the parties would also be severally liable because either or both could be named as an initial defendant with regard to the actions of the common agent.[19] As a result, because the vicariously liable parties would be jointly *and* severally liable, they would clearly meet the definition of "joint tort-feasors" in Section 8322 of UCATA. Furthermore, the right to contribution from a joint tortfeasor would extend even to parties that were not named in an initial action by the plaintiff. *See Burch*, 467 A.2d at 622 ("These [equitable] remedies between defendants[—*i.e.*, indemnity and contribution—]are available even against defendants whom the plaintiff does not sue."). In other words, a plaintiff does not

---

[19] In this regard, *Sleasman*'s rationale was persuasive that co-employers are like joint tortfeasors in that they are jointly and severally liable for the negligence of the common agent. *Sleasman*, 32 Pa. D. & C.3d at 194-95; *see also Societa Per Azioni De Navigazione Italia v. City of Los Angeles*, 645 P.2d 102, 111 (Cal.) (concluding that co-employers were jointly and severally liable via *respondeat superior* for negligence of common agent), *cert. denied*, 459 U.S. 990 (1982).

control which parties will ultimately bear responsibility for a verdict based on who the plaintiff initially sues.

*Mamalis* also does not constrain our decision. In that case, James Mamalis (Mamalis) contracted with McClain Moving Company (McClain) to ship personal belongings, which were subsequently destroyed in a fire while in McClain's possession. Mamalis filed an action against McClain and then a second action against Atlas Van Lines, Inc. (Atlas), who was McClain's principal. Mamalis subsequently settled his claim against McClain for $25,000 and executed a release, which purported to preserve Mamalis' claim against Atlas. The release provided that it was governed by UCATA.

Atlas then moved for summary judgment, arguing that the release between Mamalis and McClain extinguished Atlas' liability to Mamalis. The trial court denied Atlas' motion, and a jury found in favor of Mamalis. In denying Atlas' post-trial motions, the trial court reasoned that Atlas and McClain were "joint tort-feasors" under Section 8322 of UCATA, and that, pursuant to Section 8326 of UCATA, a release as to McClain did not release Mamalis' derivative claim against Atlas. *See* 42 Pa. C.S. § 8326 ("A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides . . . ."). The Superior Court reversed the trial court's decision, finding that the General Assembly intended in UCATA's definition of "joint tort-feasors" to distinguish between the vicarious liability of a principal and the joint liability of concurrent tortfeasors. Thus, the Superior Court concluded that a vicariously liable principal and a directly liable agent are not joint tortfeasors under UCATA.

This Court affirmed. Rejecting Atlas' argument that Section 8322 of UCATA is implicated whenever persons are jointly or severally liable in tort, this Court concluded that the Superior Court had "succinctly summarized the distinction between the concept

of liability vicariously imposed by law and the purpose behind UCATA" when it opined that UCATA "has arisen completely apart from the system of vicarious liability and indemnity" and addresses "how to compensate an injury [*directly*] inflicted by the acts of more than one tortfeasor." *Mamalis*, 560 A.2d at 1382-83 (quoting *Mamalis v. Atlas Van Lines, Inc.*, 528 A.2d 198, 201 (Pa. Super. 1987)). As a result, this Court held that a "claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor" and that a principal and its agent, therefore, are not "joint tort-feasors" under UCATA. *Id.* at 1383. Because there was no evidence that Atlas had any direct liability to Mamalis, Mamalis' release of his claim against McClain discharged the derivate claim against Atlas.

Notably, the factual circumstances in *Mamalis* differ appreciably from this case, most importantly in that we are not asked to determine whether an agent and its principal are "joint tort-feasors" under Section 8322 of UCATA. Further, *Mamalis* primarily concerned the effect of a release of an agent, which similarly has no bearing here. On these grounds, *Mamalis* is readily distinguishable, particularly in light of the "the axiom that decisions are to be read against their facts [to] prevent[] the wooden application of abstract principles to circumstances in which different considerations may pertain." *Maloney*, 984 A.2d at 485-86 (citation omitted).

In any case, in *Maloney*, this Court considered the inverse circumstance to *Mamalis—i.e.*, whether the release of a principal constitutes a *per se* release of an agent under the common law or UCATA—and decided not to extend *Mamalis*' holding. Observing that *Mamalis* was concerned with "a single principal, a single agent, [and] a single event," and that the medical malpractice arena has become increasingly complex in terms of defendants, claims, and insurance schemes, we held that the "interests of justice are not advanced by the extension of an inflexible common-law rule" that may

impede settlement agreements and undermine public policy. *Id.* ("The Court simply did not consider the extension of the rule to complex factual scenarios . . . .").

In so doing, we noted that *Mamalis* "sharply distinguished contribution among joint tortfeasors from the system of vicarious liability and indemnity," but we expressed hesitancy as to its rationale, commenting that *Mamalis* "departed from the definitional language of" "joint tort-feasors" in UCATA and "displaced the focus from the statutory litmus centered on the fact of liability alone in favor of the Court's own focus on the mechanism by which the parties became liable (actual contribution to the plaintiff's injury versus legal imputation)." *Id.* at 485, 490 n.17. This Court in *Maloney* also deftly explained the complexity and confusion surrounding the distinction between joint tortfeasors and vicarious liability:

> With regard to the asserted conflation of joint-and-several and vicarious liability principles, the use of the term "joint and several liability" fosters some confusion, particularly when considered in relation to the vicarious liability setting. For this reason, the Third Restatement authors decided to merely use the words "legal imputation" in such context. Notably, under either conception of joint-and-several or vicarious liability, the substantive impact is the same as concerns a plaintiff with a meritorious cause against the agent—the principal and agent are each liable to the plaintiff in the full amount of the claim, albeit there may be only a single satisfaction.
>
> Some of the underlying confusion results from the fact that the word "joint" is sometimes used to refer to the mechanism by which the parties became liable (each "jointly" contributing to the injury) and is sometimes used differently to reflect the fact that the parties have become jointly liable by whatever means. Although *Mamalis* highlighted the distinction between liability based on one's own acts versus liability imputed by law, the opinion did not recognize that joint-and-several liability imposed on joint tortfeasors shares some characteristics with vicarious liability. Joint tortfeasors generally are jointly-and-severally liable for the entire amount of a verdict, albeit that a jury may assign only a portion of fault to each. The policy justification for allocating 100 percent liability (from the plaintiff's perspective) to one who bears only, say, 40 percent of the responsibility is that, as between an innocent injured party and a culpable defendant, the defendant should bear the risk of additional loss. Thus, joint-and-several liability can be regarded as employing a form of legal imputation like that involved in the application of vicarious liability. The primary difference is

simply that the imputation is of 60 percent of the damages in the above example of joint-and-several liability (since the defendant bears 40 percent of the responsibility of his own accord), whereas the general rule is 100 percent in the case of vicarious liability. The fact that a similar form of legal imputation exists in both scenarios, however, weakens the portion of *Mamalis*' reasoning to the degree it rests on the fact of imputation alone . . . to distinguish the treatment of joint-and-several and vicarious liability in the settlement context.

*Id.* at 488-89 (citations omitted) (footnote omitted).[20]

Notwithstanding the foregoing, *Maloney* expressed some support for *Mamalis*' ultimate conclusion that a release of an agent necessarily effects a release of a principal. *See id.* at 485-86 (quoting *Hill v. McDonald*, 442 A.2d 133, 138 n.5 (D.C. Cir. 1982) ("Certainly, as a matter of logic, it is hard to see how a principal could still be held vicariously liable after the release of its agent, the only real wrongdoer. But the converse is not at all obvious.")). Nevertheless, without disturbing that holding, we clearly limited it to the straightforward factual scenario that was at issue in *Mamalis*—*i.e.*, the release of an agent in a tort scheme involving a single agent, principal, and event. *Id.* at 488 ("[W]e merely determine appropriate limits of *Mamalis*.").

With that understanding, we have no hesitancy applying the plain language of Section 8322 of UCATA to the circumstances at issue, which directs—in undeniably straightforward terms—that jointly or severally liable parties are "joint tort-feasors" subject to contribution. As this Court has explained, we are disinclined to "engraft[] a limitation on [UCATA] which the legislature did not see fit to impose." *Baker v. ACandS*, 755 A.2d

---

[20] Other jurisdictions have interpreted the identical definition of "joint tort-feasors" as expressed in Section 8322 of UCATA to encompass vicariously liable parties. *See Chilcote*, 476 A.2d at 208 ("That definition is broad enough to include a person liable solely by reason of *respondeat superior*."); *Krukiewicz v. Draper*, 725 P.2d 1349, 1351 (Utah 1986) ("Section 78-27-40(3), patterned after the 1939 Uniform Act, defines a joint tort-feasor in terms of liability, not negligence . . . ."); *Blackshear*, 391 A.2d at 748 ("In short, it makes no difference whether the [entity's] liability is based upon the doctrine of *[r]espondeat superior* or any other legal concept. The point is that both [parties] are (at least) 'severally' liable for the same injury to [the] plaintiff.").

664, 669 (Pa. 2000); *see also In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1080 (Pa. 2020) (Wecht, J., concurring) (noting that this Court should not be willing to "peer behind the curtain of . . . statutory language in search of some unspoken . . . intent"), *cert. denied*, 141 S.Ct. 1451 (2021). Accordingly, we conclude that two principals that are vicariously liable in tort for a common agent meet the definition of "joint tort-feasors" under Section 8322 of UCATA and are, therefore, subject to UCATA's rules of contribution.

### B. Indemnity

In its next issue, DCI contends that the courts below erred in finding that the Hospital could seek to prove its right to indemnity from DCI because, as a vicariously liable party, DCI was not directly liable to the McLaughlins. Thus, absent any status as a tortfeasor, DCI insists that the rules of indemnity do not apply. DCI observes that indemnity is an "equitable remedy that shifts the *entire responsibility* for damages from a party who, *without any fault*, has been required to pay because of a legal relationship to the party *at fault*." (DCI Br. at 30 (emphasis in original) (quoting *City of Wilkes-Barre v. Kaminski Bros., Inc.*, 804 A.2d 89, 92 (Pa. Cmwlth. 2002), *appeal denied*, 828 A.2d 351 (Pa. 2003)).) DCI emphasizes, however, that there is no assertion that it is directly liable in negligence or that it is otherwise primarily liable to the McLaughlins. To the contrary, DCI recognizes that it has no direct relationship to either the Hospital or the McLaughlins. Thus, DCI asserts that, to allow the Hospital to seek indemnity from DCI is to permit a medical service provider to benefit from medical services furnished by non-employee physicians without the risk of liability.

DCI also relies on the seminal case of *Builders Supply*, pointing out that the plaintiff there sued a defendant seeking indemnity and contribution for the liability it incurred in a car accident. Because the plaintiff had contributed to the underlying accident, however,

DCI observes that this Court rejected the plaintiff's claim for indemnity because the plaintiff clearly maintained some level of fault. DCI explains that, in so doing, this Court reasoned that "it is clear that the right of a person vicariously or secondarily liable for a tort *to recover from one primarily liable has been universally recognized*." (*Id.* at 32 (emphasis in original) (quoting *Builders Supply*, 77 A.2d at 371).)

Continuing, DCI recounts the case of *Philadelphia Company*, observing that the Philadelphia Company owned gas lines that were negligently damaged by the Central Traction Company's workmen while doing excavation work. DCI notes that the damage to the gas lines caused personal injury to a plaintiff, who sued the Philadelphia Company and obtained a verdict. Thereafter, DCI explains that the Philadelphia Company successfully obtained indemnity from the Central Traction Company for the negligence of its workmen. DCI observes that the trial court in the instant matter relied on *Philadelphia Company* for the proposition that "longstanding precedent appears to support one corporate entity seeking indemnification against another corporate entity whose employees may have been negligent," but it insists that *Philadelphia Company* is inapposite. (*Id.* at 33 (alteration omitted) (quoting Trial Ct. Op., 7/15/2020, at 16).)

In particular, DCI claims that *Philadelphia Company* does not control here because the parties in this case are both vicariously liable for the same agent, which is contrary to the fact pattern there. Further, while DCI acknowledges that *Philadelphia Company* involved a single vicariously liable party, it notes that this Court found that the Central Traction Company owed a duty to the plaintiffs and that it was determined to be the tortfeasor. DCI maintains that it was not hired to do anything and that no one is claiming that it is a tortfeasor or owed a duty to Ms. McLaughlin. DCI continues by reiterating that, here, the only active or primary tortfeasors are the Doctors and there are no allegations that DCI is primarily liable. Indeed, DCI observes that Pennsylvania law instructs that an

employer is not primarily liable when tortious acts are committed by its employees. (*Id.* at 34 (citing *Builders Supply*, 77 A.2d at 370).) Consequently, DCI insists that indemnity rules do not apply and that the trial court erred in failing to grant summary judgment in its favor and dismiss the Hospital's indemnity claim.

The Hospital responds that the principles of indemnification and the doctrine of equity permit it to transfer the personal injury judgment to DCI because the Hospital is a passively involved entity while DCI, through the Doctors, is the entity that provided the nephrology services that caused Ms. McLaughlin's injury. As a passively involved entity, the Hospital characterizes itself as a party without fault who, by operation of law, was required to pay for the negligence of the Doctors. The Hospital emphasizes that DCI is incorrect that indemnity only applies to circumstances that include a principal and an individual tortfeasor and not the instant case. Rather, the Hospital notes that, in *Builders Supply*, this Court referenced *Philadelphia Company* and *Globe Indemnity Co. v. Schmitt*, 53 N.E.2d 790 (Ohio 1944), with approval, which the Hospital explains are analogous to the instant matter.

In *Philadelphia Company*, the Hospital observes that although the Philadelphia Company, as a passively involved entity, was required to pay for the loss precipitated by the damage to the gas pipe, it was permitted to obtain indemnity from the Central Traction Company whose employees negligently damaged Philadelphia Company's gas pipe and injured a pedestrian. (Hospital Br. at 16 (citing *Phila. Co.*, 30 A. 934).) Similarly, in *Globe Indemnity*, the Hospital explains that although a landowner was obligated to pay for personal injuries arising from a pedestrian fall, the landowner was entitled to indemnity from the contracting company whose employees did not guard against the defective condition created by their work on the premises. (*Id.* at 17 (citing *Globe Indem. Co.*, 53 N.E.2d 790).) Based on these cases, the Hospital insists that it is the law of

Pennsylvania that a passive entity is entitled to indemnification from and against the entity whose business is responsible for causing the loss.

Accordingly, the Hospital insists that DCI's contention that it has no liability for indemnification because it is only vicariously liable, rather than directly liable, has no basis in the law. Indeed, the Hospital asserts that accepting DCI's position would shield trucking companies from liability by limiting recovery to the assets available to the truck driver and hinder dram shop litigation by limiting recovery to the assets of a server responsible for serving drinks. Thus, the Hospital maintains that "[t]he arbitrary limitation on indemnity rights advocated for by DCI is without support in the law or equitable principles and has [the] potential for significant adverse ramifications to entities entitled to equitable relief as well as tort victims." (*Id.* at 18.)

The Hospital and DCI recite correctly from established indemnity principles under the common law in Pennsylvania, but they clearly reach different conclusions as to the appropriate application of those principles to a circumstance involving two vicariously liable parties. The Hospital's argument can best be characterized as distinguishing the vicarious liability imposed by ostensible agency from that of *respondeat superior*, which would cause an ostensible employer to be merely "passively" liable for the negligence of an ostensible employee. As such, the Hospital insists that an ostensible employer can shift its liability to an *actual* employer of a common agent that is liable in tort. Because we discern no material distinction in the vicarious liability imposed by principles of ostensible agency under the MCARE Act and *respondeat superior*, however, we disagree.

To reiterate, Section 516(a)(1) of the MCARE Act, 40 P.S. § 1303.516(a)(1), provides, in relevant part, that "[a] hospital may be held vicariously liable for the acts of

another health care provider[21] through principles of ostensible agency only if the evidence shows[, *inter alia*,] that . . . a reasonably prudent person in the patient's position would be justified in the belief that the care in question was being rendered by the hospital or its agents." There is no express indication in the text of this provision or elsewhere in the relevant provisions of the MCARE Act that the General Assembly intended to *limit* the vicarious liability imposed under ostensible agency principles in the manner suggested by the Hospital, nor have the courts of Pennsylvania treated such liability differently. *See, e.g.*, *Thompson v. Nason Hosp.*, 591 A.2d 703, 706-07, 707 n.5 (Pa. 1991) (suggesting no viable difference between *respondeat superior* and ostensible agency liability); *Green v. Pa. Hosp.*, 123 A.3d 310, 316-17 (Pa. 2015) (generally considering ostensible agency and vicarious liability principles in the hospital context). To the contrary, ostensible agency was adopted as an "approach to vicarious liability" to permit a plaintiff to hold an institutional hospital liable despite that a responsible physician had independent contractor status. *Capan v. Divine Providence Hosp.*, 430 A.2d 647, 648-49 (Pa. Super. 1980).[22]

Further, a primary purpose of the MCARE Act is to ensure that "[a] person who has sustained injury or death as a result of medical negligence by a health care provider [is] afforded a prompt determination and fair compensation" by imposing an ostensible agency relationship between a hospital and an independent contractor physician.

---

[21] "Health care provider" is defined in Section 503 of the MCARE Act, 40 P.S. § 1303.503, in relevant part, as "a person, including a corporation, university or other educational institution licensed or approved by the Commonwealth to provide health care or professional medical services as a physician." Accordingly, the Doctors would fall under this definition.

[22] Common law ostensible agency under *Capan* was essentially codified by Section 516 of the MCARE Act. *See Green*, 123 A.3d at 322 (observing that ostensible agency under Section 516(a)(1) of MCARE Act is substantially same as common law factor of ostensible agency under *Capan*).

Section 102(4) of the MCARE Act, 40 P.S. § 1303.102(4). In some sense, this is a commercial judgment to extend liability from the independent contractor physician treating the patient to the hospital. As our case law makes clear, vicarious liability under *respondeat superior* principles serves the same purpose. Indeed, it is well-settled that "vicarious liability is a policy-based allocation of risk" that responds to a specific need to fully compensate a victim by providing another source of funds from which a plaintiff may recover. *Scampone v. Highland Park Care Ctr., LLC*, 57 A.3d 582, 597 (Pa. 2012); *Milton S. Hershey Med. Ctr. of Pa. State Univ. v. Cmwlth. of Pa. Med. Pro. Liab. Catastrophe Loss Fund*, 821 A.2d 1205, 1212 (Pa. 2003) (quoting *Mamalis*, 560 A.2d at 1383); *see also Crowell v. City of Phila.*, 613 A.2d 1178, 1182 (Pa. 1992) ("If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal. If the agent is available or has means to pay, invocation of the doctrine is unnecessary because the injured party has a fund from which to recover." (quoting *Mamalis*, 560 A.2d at 1383)). As we will explain, the commonality in liability between an ostensible and actual employer precludes one vicariously liable party from obtaining indemnity from the other.[23]

---

[23] Moreover, to the extent the Hospital suggests that an *actual* employer is *directly* liable for the negligence of its employees because of the principle that "the corporation, not the employee, is liable for acts committed by the employee in the course of employment," we similarly disagree. *Tayar*, 47 A.3d at 1196. Although we observed in *Scampone* that "the ready distinction between direct and vicarious liability is somewhat obscured" in the corporate context, we, nevertheless, recognized that such a distinction exists:

> The corporation, as principal, assumes the risk of individual agents' negligence under the theory of vicarious liability. In this scenario, the corporation's liability is derivative of the agents' breach of their duties of care to the plaintiff. But, this Court has also recognized that a corporation may also owe duties of care directly to a plaintiff, separate from those of its individual agents, such as duties to maintain safe facilities[] and to hire and oversee competent staff. . . . The direct and vicarious theories of liability are grounded in distinct policies and serve complementary purposes in the

(continued…)

In *Builders Supply*, a plaintiff sued a defendant, alleging that the defendant had negligently caused a vehicle accident for which the plaintiff was determined to be responsible in a separate action, and the plaintiff sought indemnity for the entire amount of the verdict against him. Denying the plaintiff's indemnity claim, we recognized that "[t]he universal rule" concerning indemnity prohibits a party that is jointly and severally liable from seeking indemnity "from those who with him caused the injury." *Builders Supply*, 77 A.2d at 371. Further, we explained that the difference in liability that permits one party to obtain indemnity from another is "a difference in the *character* or *kind* of the wrongs which cause[d] the injury and in the nature of the legal obligation owed by each of the wrongdoers." *Id.* at 370 (emphasis in original). Because the trial court in the separate action concluded that the plaintiff's own negligence was at least a contributing factor to the vehicle accident, we held that the plaintiff could not recover indemnity "on any theory of primary and secondary liability or of comparative degrees of negligence."

---

law of torts, with the goal of fully compensating a victim of negligence in an appropriate case.

*Scampone*, 57 A.3d at 597-98 (citations omitted). This is not to say that a vicariously liable employer is not liable for the *full* extent of the employee's liability, which is what this Court alluded to in *Tayar*. But any attempt by the Hospital to blur the lines between direct and vicarious liability in the corporate context must be rejected because, as *Scampone* makes clear, the distinction is significant. By way of example, in the present case, the McLaughlins brought claims against the Hospital on theories of both direct liability and ostensible agency, but they subsequently agreed to dismiss any claims of direct negligence against the Hospital and to proceed against it only on claims of ostensible agency. After accepting that that it was the ostensible employer of the Doctors, the Hospital became vicariously liable for the verdict against them, but the trial court granted the Hospital's motion for indemnity from the Doctors, which is a right that is not available under a direct negligence theory. Likewise, given that the McLaughlins sued the Doctors directly in negligence and not DCI, DCI's liability would be vicarious as the Doctors' employer for the *full* amount of the verdict. Thus, we reiterate that there would be no meaningful distinction between the parties' liability under the theories presented in this case.

*Id.* at 374. In other words, we held that the plaintiff could not seek indemnity from another responsible party when the plaintiff was also at fault for the injury at issue.

Where two principals are vicariously liable in tort for a common agent, clearly there would be no "difference in the *character* or *kind*" of the legal obligation owed to a plaintiff that would permit one vicariously liable party to shift its entire obligation to the other. *Id.* at 370. Rather, *Builders Supply* instructs that those legal obligations would be akin to joint and several liability, and indemnity is not permitted in that circumstance. If we allowed one vicariously liable party to obtain indemnity from another party that is also vicariously liable for a common agent, it would essentially create a "circle of indemnity" or "loop of loss transfer" because the indemnitor would subsequently be able to shift its liability back to the indemnitee under the same theory. (*See* DCI Br. at 37.); *see also Maloney*, 984 A.2d at 483. This hypothetical makes clear indemnity principles do not apply to a circumstance involving two vicariously liable parties responsible in tort for a common agent.

This decision is also not in conflict with *Philadelphia Company* or *Globe Indemnity*. As the parties have explained, in *Philadelphia Company*, the Philadelphia Company was permitted to recover from the Central Traction Company for liability it incurred because of the negligence of the Central Traction Company's workmen. *Philadelphia Co.*, 30 A. at 935-36. This Court explained that the Philadelphia Company was entitled to such indemnity because it was essentially a "passively" liable entity that had no legal relation to the Central Traction Company or its workmen. *Id.* Likewise, in *Globe Indemnity*, the occupier of premises was liable for damages sustained by a pedestrian who was injured on his property, but the occupier was entitled to indemnity from the contractor who negligently caused the dangerous condition and resulting injury. *Globe Indem.*, 53 N.E.2d at 790-94.

While we acknowledge that those cases stand for the proposition that an innocent or "passive" corporate entity can obtain indemnity from another corporate entity whose negligent employees were at fault, it is significant that, in both cases, the indemnitee had no legal relationship to the actively negligent party in the form of statutorily imposed vicarious liability. Indeed, the plaintiffs in *Philadelphia Company* and *Globe Indemnity* could not have sued the Philadelphia Company or the occupier of the premises under a theory of *vicarious liability* for the negligence of the employees. As a consequence, those cases are inapposite to a factual circumstance involving two parties that are vicariously liable for a common agent.

Finally, even if we agreed that it would be equitable to permit an ostensible employer to obtain indemnity from the actual employer of negligent employees that were furthering the actual employer's business, we stress that we cannot utilize equity as a vehicle to override the text of Section 516 of the MCARE Act. As noted, our goal in statutory interpretation is to ascertain the intent of the legislature, and the best evidence of legislative intent is the plain language of the statute at issue. *See* 1 Pa. C.S. § 1921(a); *Miller*, 173 A.3d at 1168. Section 516 of the MCARE Act provides in clear terms that an ostensible employer is *vicariously liable* for the negligence of an ostensible employee. If the General Assembly intended to limit that liability in circumstances like the present, it could have included language in the MCARE Act to that effect. Accordingly, we conclude that the law does not permit a party that is vicariously liable in tort to obtain indemnity from another party that is vicariously liable for a common agent.[24]

---

[24] To the extent that Justice Wecht in his concurring opinion and opinion in support of affirmance suggests that the Hospital can shift its entire liability to DCI via indemnity if it can prove that it has no active fault, we disagree. Even if the Hospital can show that it has no active fault, its status as a vicariously liable party pursuant to Section 516 of the MCARE Act would not change. Vicarious liability is purposefully not based upon fault. Thus, the Hospital would still be vicariously liable for the full extent of the Doctors' (continued…)

## C. Expansion of Legal Theories

In its final issue, DCI claims that the trial court erroneously expanded existing common law concerning indemnity and contribution in its decision and that the Superior Court erred by concluding that it was merely an "error-correcting court" that could not overrule the trial court's decision due to a lack of controlling case law from this Court. DCI alleges that the Superior Court's reasoning is flawed in permitting trial courts to create causes of action "while constricting the Superior Court from reviewing the propriety of such a ruling." (DCI Br. at 28.) DCI also observes that the decisions below were driven by a sense of equity but that the Superior Court is "bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result." (*Id.* at 29 (quoting *Matter of M.P.*, 204 A.3d 976, 986 (Pa. Super. 2019)).) Accordingly, DCI insists that the better—and correct—course of action is for trial and intermediate courts to reject calls to expand and enunciate the law and to allow this Court, in the first instance, to do so. For that reason alone, DCI contends that the courts below erred and should have dismissed the Hospital's claims.

---

negligence, and the Hospital's and DCI's liability would remain equivalent. Given that there would be no difference in the character of their liability, well-settled principles of indemnity law would prevent the Hospital from shifting its liability to DCI. *See Builders Supply*, 77 A.2d at 370 (reasoning that indemnity is based upon "a difference in the *character* or *kind* of the wrongs which cause[d] the injury and in the nature of the legal obligation owed by each of the wrongdoers"). This reasoning does not rest entirely on Section 516 of the MCARE Act, as Justice Wecht suggests. It is not so much Section 516 that prevents the Hospital from obtaining indemnity, but the character of the liability Section 516 imposes upon the Hospital *as compared with the liability of DCI as the Doctors' employer*. Indeed, Justice Wecht would appear to conclude, on the one hand, that two parties that are vicariously liable for a common agent are jointly and severally liable for purposes of contribution, but, on the other hand, would allow one of those jointly and severally liable parties to obtain indemnity from the other. This reasoning conflicts with the essence of this Court's holding in *Builders Supply*. *Builders Supply*, 77 A.2d at 371 ("The universal rule is that when two or more contribute by their wrongdoing to the injury of another, the injured party may recover from all of them in a joint action or he may pursue any one of them and recover from him, in which case the latter is not entitled to indemnity from those who with him caused the injury.").

DCI mischaracterizes the decisions below. In issues of first impression, the trial court sought to resolve this complicated dispute in a manner faithful to longstanding principles of law concerning indemnity and contribution. Upon review of competing post-trial motions, the trial court reiterated its belief that those principles of law permitted the Hospital to seek to prove its right to indemnity and contribution, but it recognized that there was no controlling appellate authority as to the legal questions before it. As a result, the trial court agreed with DCI that there was substantial ground for difference of opinion on the law, and it certified the issues for interlocutory appeal pursuant to Section 702(b) of the Judicial Code. Similarly, the Superior Court agreed with the trial court that present law appeared to allow the Hospital to seek equitable relief and, in so doing, commented that it was not its role to divert from what the current state of the law suggested. Consequently, this is not a circumstance where the courts below failed to perform their functions and merely consented to the Hospital's suggestion that it could seek contribution and indemnity from DCI in violation of standing principles of law. As such, we discern no error in either decision upon the grounds suggested by DCI.

## IV. CONCLUSION

We reiterate that this Opinion renders no judgment as to the liability of the Hospital and DCI. Upon remand, the trial court can resolve any questions concerning the liability of the parties and how this Opinion affects the outcome of this matter. If the Hospital and DCI are determined to be vicariously liable for the negligence of the Doctors via principles of ostensible agency under the MCARE Act and *respondeat superior*, respectively, however, the trial court should permit the Hospital to obtain contribution, but not

indemnity, from DCI.[25]  Accordingly, we remand this matter to the Superior Court to remand to the trial court for further proceedings consistent with this Opinion.

Justices Dougherty and Mundy join this opinion.

Chief Justice Todd and Justices Donohue and Wecht join Parts I, II, III.A, and III.C of the opinion.

Justice Wecht files a concurring opinion and opinion supporting affirmance in which Chief Justice Todd and Justice Donohue join.

---

[25] Nothing in this Opinion denies the Hospital or DCI the opportunity to establish the other party's active negligence upon remand, which in turn, could lead to an indemnity award. We reserve that question for the trial court to determine.  Nor does this Opinion express any judgment as to what factors the trial court may consider in an apportionment analysis relative to contribution.  That question is not before this Court.